2019 IL App (4th) 180452

NO. 4-18-0452

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Vermilion County |
| DUSTIN J. LAWSON, | ) | No. 14CF602 |
| Defendant-Appellant. | ) | |
| | ) | The Honorable |
| | ) | Nancy S. Fahey |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices Knecht and Turner concurred in the judgment and opinion.

**OPINION**

¶ 1        In December 2014, the State charged defendant, Dustin J. Lawson, with one count

of armed robbery and one count of attempt (armed robbery). 720 ILCS 5/8-4(a), 18-2(a)(1)

(West 2012). Following defendant's conviction and sentence, defendant appealed to this court

raising numerous issues. In pertinent part, defendant argued that the trial court failed to conduct a

*Krankel* inquiry into his *pro se* claims of ineffective assistance of counsel. See *People v.*

*Krankel*, 102 Ill. 2d 181 464 N.E.2d 1045 (1984). This court agreed and remanded for a *Krankel*

hearing. *People v. Lawson*, 2017 IL App (4th) 150590-U, ¶ 29. On remand, the trial court

declined to appoint new counsel because it concluded that "the matters were of trial strategy and

that there's no merit to the allegations."

¶ 2        Defendant appeals, arguing in pertinent part that the trial court erred by not

appointing him new counsel. The State argues that (1) this court lacks jurisdiction and

(2) defendant was not entitled to new counsel.

¶ 3        We conclude that (1) this court has jurisdiction and (2) defendant was entitled to new counsel because his allegations could support a claim of ineffective assistance of counsel. Ill. Const. 1970, art. VI, § 6; *People v. Roddis*, 2018 IL App (4th) 170605, ¶ 77, 119 N.E.3d 52. Accordingly, we remand for further proceedings.

¶ 4                              I. BACKGROUND

¶ 5                              A. Defendant's Trial

¶ 6        In December 2014, the State charged defendant with one count of armed robbery and one count of attempt (armed robbery). 720 ILCS 5/8-4(a), 18-2(a)(1) (West 2012). At defendant's jury trial, the State's evidence consisted primarily of Leroy Harmon's testimony. Harmon, the clerk working at Walgreens on the night of the alleged robbery, testified that on December 6, 2014, defendant approached him, displayed a knife, and demanded money from the cash register. Harmon stated that defendant ran out of the store because he was unable to open the cash register. Harmon also testified that he did not know defendant and had never seen him prior to this incident. Ultimately, the jury found defendant guilty of both counts.

¶ 7                              B. The *Pro Se* Claims

¶ 8        Prior to his sentencing hearing, defendant mailed a letter to the trial court, claiming that he and Harmon knew each other and that Harmon lied at trial. Defendant stated that Craig Sullivan had introduced him to Harmon in October 2014. Defendant further stated that he and Harmon had spoken many times since then. Defendant further claimed that he informed his attorney about this before trial but that counsel replied that it was counsel's decision to determine what evidence to present and he chose not to present this evidence.

¶ 9        In May 2015, the trial court conducted a sentencing hearing. At this hearing,

defendant informed the trial court that his attorney told him, "[S]ometimes you must plead guilty to things you don't do." Defendant repeated his assertion that he knew Harmon and that Harmon had lied at trial. Defendant stated that he made "the biggest mistake of [his] life" by not testifying on his own behalf.

¶ 10    The trial court did not inquire further into defendant's claims and sentenced him to 15 years in prison.

¶ 11                              C. Defendant's First Appeal

¶ 12    In defendant's first appeal, he raised numerous arguments. As relevant here, defendant argued that the trial court failed to conduct a *Krankel* hearing about his *pro se* claims of ineffective assistance of counsel. The State conceded that the trial court should have conducted a *Krankel* hearing and agreed that the case should be remanded.

¶ 13    In December 2017, this court accepted the State's concession and remanded the case for a *Krankel* hearing. *Lawson*, 2017 IL App (4th) 150590-U, ¶¶ 21, 29-31. Due to this limited remand, this court declined to address defendant's other arguments because, "[d]epending on the result of the *Krankel* hearing, those other issues may become moot." *Id.* ¶ 29. This court did not explicitly state that it was retaining jurisdiction to review the proceedings following remand. See *id.* ¶¶ 29-31.

¶ 14                              D. The Proceedings on Remand

¶ 15    In June 2018, the trial court on remand conducted a *Krankel* hearing. Defendant's trial attorney was also present. At the hearing, the following exchange occurred between defendant and the trial court:

"THE COURT: Okay. So you've raised the issue of ineffective assistance of counsel and I'm just gonna let you tell me what these attorneys in your mind

did not do correctly.

THE DEFENDANT: One of my biggest issues was towards trial, before we started trial I did bring up that I had a witness that was willing to testify against the witness, the only witness on this case, and I believe I had this conversation with [my attorney]. At the time he told me that he thought there would be other ways to attack the witness's credibility, thus being that my witness had a background. My argument was my witness was related through not marriage but his sister has children with the victim's brother and he introduced me to the victim months beforehand the incident even happened. My argument was if he was willing to lie about that, the foundation of everything, then what else was he willing to lie about? So when I brought it up to [my attorney], he told me, like I said, you know, we have other ways to attack credibility. That never happened. You know, I had the statements written up, Your Honor. ***

THE COURT: Okay.

THE DEFENDANT: You know, was I ignorant to the law? Yeah, I didn't really know a lot of things that I know now, but—

THE COURT: But other than that—or is there anything else?

THE DEFENDANT: I just feel like, I don't want to attack [my attorney], because, you know, I've really come home over the last four years, but I feel like this whole thing was shoved to the side, my defense wasn't taken serious. When I did talk to him about it he was more concerned about trying to get me to plea out ***. *** I told him I'm not willing to take it, and somewhere along the lines the rapport was sometimes you gotta cop out to the charge that you didn't commit,

you know, however it came out, and I'm just saying how I remember it, that I took very personal like, he just—I felt like he didn't believe me from the very beginning, you know. You know, I just didn't feel like I got a good—a fair shake for my defense.

THE COURT: Okay. Anything else, sir?

THE DEFENDANT: No. I don't remember everything else I put in the record. I didn't have time to go over my transcripts and actually express myself before *** court today so—

THE COURT: Okay. I'm gonna allow [your trial attorney] to respond."

¶ 16    In pertinent part, defendant's attorney responded as follows:

"As far as his witness Mr. Sullivan, he absolutely told me about Mr. Sullivan. He absolutely told me that he knew Leroy [Harmon], but—but what—for me and why we did what we did, why I chose to go this way was I think it was gonna be sort of—the trial was gonna be a battle of narrative, okay, and if we don't present any evidence then our whole thing, our whole closing argument, our whole cross-examination of Leroy, of the cops, everything, was that other than Leroy getting on the stand [and] saying that something happened there was no other evidence presented. There was no 911 call, there was no video of it, there was no video of the alleged pulling of the knife and taking the cigarette thing. There was video of him leaving and entering ***. *** And then I wouldn't have known of this until he testified, but with Leroy, the way he testified and kind of came off, you know, *** he just came across as a nice guy. So if you put up—say we call Craig Sullivan, okay, and if we call Craig Sullivan something must have

happened there. And then, you know, if he testifies and starts to admit some facts and then if Craig Sullivan testifies that yes the defendant knows him it helps with ID. Although, [I] recall during the trial to be—I mean, we weren't really challenging ID. It was pretty very clear when he was walking in and when he was coming out they had [a] camera right there at his face. *** So for all of those reasons that's why I didn't call Craig Sullivan even though he absolutely told me about it ***."

¶ 17 Defendant's trial attorney also stated that he encouraged defendant to take the State's plea deal because he believed the sentence "would be significantly *** less than had he lost at trial [and] whatever the Court could give him." The attorney noted that he encouraged defendant not to testify because "there's a possibility he would be testifying in the orange jumpsuit" and because the State would impeach defendant's testimony with his prior convictions.

¶ 18                    E. The Trial Court's Ruling and the Second Appeal

¶ 19 The trial court concluded "that there's no merit to the *Krankel* issue. That the matters were of trial strategy and that there's no merit to the allegations."

¶ 20                                II. ANALYSIS

¶ 21 Defendant appeals, arguing in pertinent part that the trial court erred on remand by not appointing him new counsel. The State argues that (1) this court lacks jurisdiction and (2) defendant was not entitled to new counsel. We address these issues in turn.

¶ 22                         A. This Court's Jurisdiction

¶ 23 The State argues that we do not have jurisdiction to review the *Krankel* hearing the trial court conducted on remand. Essentially, the State argues that this court is without

jurisdiction because (1) we did not explicitly retain jurisdiction in our remand instructions, (2) the trial court's denial of counsel at a *Krankel* hearing is not a final and appealable order, and (3) there is no Illinois Supreme Court rule that explicitly allows for an appeal from a *Krankel* hearing. We conclude that we have jurisdiction.

¶ 24                                          1. *The Applicable Law*

¶ 25            The Illinois Constitution establishes this court's jurisdiction as follows:

> "Appeals from final judgments of a Circuit Court are a matter of right to the Appellate Court ***. The Supreme Court may provide by rule for appeals to the Appellate Court from other than final judgments of Circuit Courts. The Appellate Court may exercise original jurisdiction when necessary to the complete determination of any case on review." Ill. Const. 1970, art. VI, § 6.

¶ 26            This court has jurisdiction to review final judgments entered by the circuit court. *Id.*; *People v. Vara*, 2018 IL 121823, ¶ 13, 115 N.E.3d 53. "A final judgment 'determines the litigation on the merits such that the only thing remaining is to proceed with execution of judgment.' " *Vara*, 2018 IL 121823, ¶ 13 (quoting *People v. Shinaul*, 2017 IL 120162, ¶ 10, 88 N.E.3d 760). "In a criminal case, the final judgment is the sentence." *Id.* ¶ 14.

¶ 27            "When a notice of appeal is properly filed, the appellate court's jurisdiction attaches *instanter* and the trial court loses jurisdiction." *People v. Richards*, 394 Ill. App. 3d 706, 708, 916 N.E.2d 66, 68 (2009). "When a matter is properly before the appellate court, it may exercise original jurisdiction when necessary for the complete determination of any case on review." *Ashmore v. Board of Trustees of the Bloomington Police Pension Fund*, 2018 IL App (4th) 180196, ¶ 55; see also *People v. Owens*, 2018 IL App (4th) 170506, ¶ 38 (because this court had jurisdiction to consider the defendant's double jeopardy argument pursuant to Illinois

Supreme Court Rule 604(f) (eff. July 1, 2017), this court also had jurisdiction to consider his due process argument).

¶ 28                                  2. *This Case*

¶ 29         After defendant was convicted and sentenced, he appealed, arguing in pertinent part that the trial court failed to conduct a *Krankel* hearing into his *pro se* claims of ineffective assistance of counsel. The State conceded that this court should remand for a *Krankel* hearing.

¶ 30         In December 2017, this court accepted the State's concession and remanded for the limited purpose of conducting a *Krankel* hearing. *Lawson*, 2017 IL App (4th) 150590-U, ¶¶ 21, 29-31. This court declined to address defendant's other arguments because, "[d]epending on the result of the *Krankel* hearing, those other issues may become moot." *Id.* ¶ 29. This court did not explicitly state that it was retaining jurisdiction to review the proceedings following remand. See *id.* ¶¶ 29-31.

¶ 31         On remand, the trial court conducted a *Krankel* hearing and did not appoint a new attorney for defendant because the court concluded that defendant's allegations were without merit and pertained only to matters of trial strategy. After the court so ruled, defendant then filed a second notice of appeal.

¶ 32         Defendant's first notice of appeal following his conviction and sentence vested this court with jurisdiction and divested the trial court of jurisdiction. Ill. Const. 1970, art. VI, § 6; *Vara*, 2018 IL 121823, ¶ 13; *Richards*, 394 Ill. App. 3d at 708. The Illinois Constitution provides that this court "may exercise original jurisdiction when necessary to the complete determination of any case on review." Ill. Const. 1970, art. VI, § 6. This constitutional provision, in conjunction with defendant's first notice of appeal and our remand for a *Krankel* hearing, gives this court jurisdiction to review defendant's appeal arising from the *Krankel* hearing. See

Ill. Const. 1970, art. VI, § 6; see also *Owens*, 2018 IL App (4th) 170506, ¶ 38. Stated simply, when this court has jurisdiction and it remands a matter to the trial court, this court has jurisdiction to review the proceedings on remand. See Ill. Const. 1970, art. VI, § 6; see also *Ashmore*, 2018 IL App (4th) 180196, ¶ 55.

¶ 33    Further, the Illinois Supreme Court has noted that a court of review may consider claims arising from a *Krankel* hearing, as well as claims that the defendant brought in his first appeal. See *People v. Moore*, 207 Ill. 2d 68, 81-82, 797 N.E.2d 631, 639-40 (2003) ("If the trial court denies the motion, defendant may still appeal his assertion of ineffective assistance of counsel along with his other assignments of error."); see also *Krankel*, 102 Ill. 2d at 189 ("If [after conducting a *Krankel* hearing,] the circuit court denies defendant a new trial, defendant can still appeal to the appellate court based on his assertion of ineffective assistance of counsel or the other three issues which were raised in the appellate court and in this court but were not addressed."). Likewise, the appellate court has regularly remanded cases for a *Krankel* hearing and reviewed the proceedings that occurred on remand without having explicitly stated the appellate court was retaining jurisdiction. *People v. Robinson*, 2017 IL App (1st) 161595, ¶ 4, 93 N.E.3d 573; *People v. Downs*, 2017 IL App (2d) 121156-C, ¶¶ 1-6, 83 N.E.3d 584; *People v. Lobdell*, 2019 IL App (3d) 180385, ¶¶ 5-8; *People v. Peck*, 2017 IL App (4th) 160410, ¶¶ 2-4, 79 N.E.3d 232.

¶ 34    Furthermore, after the State's brief was filed, this court recently addressed the State's jurisdictional argument in *People v. Wilson*, 2019 IL App (4th) 180214, ¶ 25. In that case, this court concluded as follows:

> "Because we are remanding the matter for further proceedings on
> defendant's *pro se* claim of ineffective assistance of trial counsel, we again

decline to reach the merits of defendant's other claims. [Citation]. *** [However], the State suggests this court lacks jurisdiction to address defendant's other claims because our prior order did not explicitly retain jurisdiction or vacate the trial court's denial of defendant's posttrial motion to reconsider his sentence. While our prior order did not *explicitly* indicate we were retaining jurisdiction, the substance of the order—that we were declining to address defendant's other claims on appeal because the result from a preliminary *Krankel* inquiry on remand could render those claims moot—makes abundantly clear we were retaining jurisdiction. See [*People v.*] *Wilson*, 2016 IL App (4th) 150628-U, ¶ 29. The State's cited authority, *People v. Garrett*, 139 Ill. 2d 189, 564 N.E.2d 784 (1990), does not support its position that a court loses jurisdiction by failing to *explicitly* retain jurisdiction. Instead, *Garrett* holds this court is empowered under Illinois Supreme Court Rule 615(b) (eff. Jan. 1, 1967) to remand a cause for a hearing on a particular matter while retaining jurisdiction. *Garrett*, 139 Ill. 2d at 195." (Emphasis in original.) *Id.*

¶ 35 We likewise conclude that even though our first order did not state that we were retaining jurisdiction, "the substance of the order—that we were declining to address defendant's other claims on appeal because the result from a preliminary *Krankel* inquiry on remand could render those claims moot—makes abundantly clear we were retaining jurisdiction." *Id.* Accordingly, this court has jurisdiction to consider defendant's claims arising from the *Krankel* hearing.

¶ 36       B. The *Krankel* Hearing

¶ 37 In pertinent part, defendant argues that he demonstrated possible neglect of his

case and that the trial court should have appointed new counsel to investigate his claims. We agree.

¶ 38                                    1. *The Applicable Law*

¶ 39        In *Krankel*, 102 Ill. 2d at 187, the defendant filed a *pro se* posttrial motion in which he alleged that his trial counsel was ineffective. The defendant personally argued his motion, which the trial court denied. *Id.* at 188-89. On appeal, the State conceded that the defendant should have had new counsel to represent him on his motion. *Id.* at 189. The Illinois Supreme Court agreed and remanded the case for a new hearing with new counsel to determine whether the defendant was denied effective assistance of counsel. *Id.* The common-law procedure derived from *Krankel* and its progeny "serves the narrow purpose of allowing the trial court to decide whether to appoint independent counsel to argue a defendant's *pro se* posttrial ineffective assistance claims." *People v. Patrick*, 2011 IL 111666, ¶ 39, 960 N.E.2d 1114.

¶ 40        "The sole question in a *Krankel* inquiry is whether to appoint independent counsel to represent the defendant on his *pro se* ineffective assistance claims." *People v. Rhodes*, 2019 IL App (4th) 160917, ¶ 12. "However, the trial court is not required to automatically appoint new counsel when a defendant raises such a claim." *People v. Ayres*, 2017 IL 120071, ¶ 11, 88 N.E.3d 732. The trial court must conduct an inquiry to determine the factual basis of the defendant's claims. *Id.* "If the court determines the claim lacks merit or pertains only to matters of trial strategy, new counsel need not be appointed and the *pro se* motion may be denied." *People v. Taylor*, 237 Ill. 2d 68, 75, 927 N.E.2d 1172, 1175-76 (2010). "However, if the defendant's allegations show possible neglect of the case, new counsel should be appointed to argue the defendant's claim of ineffective assistance." *Id.*

¶ 41        "A claim may be meritless if it pertains *solely* to a matter of trial strategy."

- 11 -

(Emphasis added.) *Roddis*, 2018 IL App (4th) 170605, ¶ 75. A claim is meritless if it does not fall within the definition of ineffective assistance of counsel as provided in *Strickland v. Washington*, 466 U.S. 668 (1984). *Roddis*, 2018 IL App (4th) 170605, ¶ 75. To establish a claim of ineffective assistance of counsel on the merits, the defendant must show that counsel's performance was (1) deficient and (2) prejudicial. *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 81.

¶ 42        "[C]ertain claims that may *generally* be matters of trial strategy could still potentially support an ineffective assistance claim." (Emphasis in original.) *Roddis*, 2018 IL App (4th) 170605, ¶ 76. "Given that a defendant may, at least potentially, overcome the strong presumption of sound trial strategy, a [trial] court should not dismiss a claim of ineffectiveness on the bare fact that it may relate to trial strategy." *People v. Maya*, 2019 IL App (3d) 180275, ¶ 27. Thus, when dealing with matters of trial strategy at a *Krankel* hearing, the trial court must determine if the allegations and factual bases *could support* a claim that trial counsel was objectively unreasonable. *Roddis*, 2018 IL App (4th) 170605, ¶ 77. "If the allegations and factual bases could support that claim, new counsel should be appointed." *Id.* Stated another way, "a defendant need not actually demonstrate ineffective assistance, but merely show possible neglect of the case." *Maya*, 2019 IL App (3d) 180275, ¶ 27.

¶ 43        "We review *de novo* the manner in which the trial court conducted its *Krankel* hearing." *People v. Fields*, 2013 IL App (2d) 120945, ¶ 39, 997 N.E.2d 791. However, when a trial court has properly conducted a *Krankel* hearing, this court will review the trial court's determination that a defendant's claim does not demonstrate a possible neglect of the case by asking if that decision is manifestly erroneous. *Maya*, 2019 IL App (3d) 180275, ¶ 17. A decision is manifestly erroneous "when the opposite conclusion is clearly evident." *People v.*

*Coleman*, 2013 IL 113307, ¶ 98, 996 N.E.2d 617.

¶ 44    In *Maya*, 2019 IL App (3d) 180275, ¶ 3, a case that procedurally is remarkably similar to the present case, the State charged the defendant with first degree murder, attempted murder, and unlawful use of a weapon by a felon. During jury selection, Kevin McGrath—a prospective juror—indicated that he worked as a correctional officer for the Will County Sheriff's Department. *Id.* ¶ 4. Defense counsel did not inquire about McGrath's profession and did not seek to dismiss McGrath. *Id.* McGrath was ultimately seated on the jury, and the jury found the defendant guilty of both counts. *Id.* ¶ 5.

¶ 45    The defendant then filed a *pro se* posttrial motion in which he argued that George Lenard—one of his attorneys—was ineffective for failing to remove the correctional officer from the jury pool. *Id.* ¶ 6. The trial court did not address this *pro se* argument, and the Third District in *Maya* remanded for a *Krankel* hearing. *Id.* ¶¶ 7-10. On remand, the defendant alleged that (1) his attorney refused to order a psychological test to determine if he was fit to stand trial and (2) he had a "tainted" jury. *Id.* ¶¶ 11-12. Regarding his second allegation, defendant stated as follows:

> "Mr. George Lenard *** allowed me to have a tainted jury which had a correctional officer from the housing unit where I was housed named Kevin McGrath, who I had several altercations with who would tell other inmates about my case. Since my case was against a minor and—and two females, he would tell other inmates in hopes to have them attack me and who would come to my cell and verbally insult me. Before trial he knew who I was by me having a high profile case and eventually working on my *** POD nine times before trial ***. After I informed George Lenard about him, he responded telling me, 'Oh, well,

we rather have him rather than anyone else or the venireman who's a State's Attorney.' In another occasion, after I informed him I didn't want him on my jury, he told me, 'Well, he said he was going to be fair.' This [correctional officer] clearly had hatred towards me so of course he was going to find me guilty." *Id.* ¶ 11.

¶ 46 The trial court briefly examined Lenard about defendant's fitness to stand trial, but the court did not inquire about McGrath or the composition of the jury. *Id.* ¶ 13. Ultimately, the trial court concluded that defendant had not shown a possible neglect of the case and declined to appoint counsel. *Id.*

¶ 47 On appeal from the *Krankel* hearing, the defendant argued he sufficiently demonstrated possible neglect of his case and that the trial court's finding was manifestly erroneous. *Id.* ¶ 15. The Third District agreed, concluding as follows:

"[The State argues] that the court did not err in finding that the defendant failed to show possible neglect of his case because counsel's decision not to exercise a peremptory challenge on McGrath was a matter of trial strategy. Our supreme court has stated that the circuit court may decline to appoint new counsel following a preliminary *Krankel* inquiry where the defendant's claim 'pertains only to matters of trial strategy.' *E.g.*, *Moore*, 207 Ill. 2d at 78. We recognize that this statement, read most strictly, could imply that any claim possibly relating to trial strategy is *per se* exempt under *Krankel*. However, we find such a reading to be inconsistent with current precedent concerning claims of ineffective assistance of counsel based on trial strategy.

The standard under which all claims of ineffective assistance of counsel are analyzed was set forth in the seminal case of *Strickland v. Washington*, 466 U.S. 668 (1984). In establishing that standard, the United States Supreme Court cautioned that judicial scrutiny of counsel's performance must be highly deferential. *Id.* at 689. The Court held: '[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." ' " *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Our own supreme court has reaffirmed and emphasized this position on numerous occasions. [Citations.]

To be sure, both the United States and Illinois Supreme Courts have made clear that the notion of trial strategy presents a tall hurdle for a defendant raising a claim of ineffective assistance of counsel. But neither court has held that matters involving counsel's trial strategy are unavoidably or absolutely exempt from such a claim. Our supreme court's repeated references to overcoming the presumption of sound trial strategy necessarily dictate that that presumption can, in fact, be rebutted. See, *e.g.*, *People v. Miller*, 2013 IL App (1st) 110879, ¶ 84 ("[D]efendant rebutted the presumption that his counsel's decision not to attempt to suppress the statement constituted trial strategy ***.").

As the cases cited above demonstrate, a strict interpretation of our supreme court's statement that the circuit court may decline to appoint new counsel following a *Krankel* inquiry if the defendant's claim 'pertains only to

matters of trial strategy' (*e.g.*, *Moore*, 207 Ill. 2d at 78) is untenable. Given that a defendant may, at least potentially, overcome the strong presumption of sound trial strategy, a circuit court should not dismiss a claim of ineffectiveness on the bare fact that it may relate to trial strategy. As we explained above, *Krankel* and its progeny simply create a procedural framework for the resolution of posttrial claims of ineffectiveness. It would be illogical to hold such claims to a more rigorous standard than any other claim of ineffective assistance. It would make especially little sense in the context of the preliminary inquiry, where a defendant need not actually demonstrate ineffective assistance, but merely show possible neglect of the case. See *People v. Roddis*, 2018 IL App (4th) 170605, ¶¶ 97-100 (comparing the preliminary *Krankel* inquiry to the first stage of postconviction proceedings).

\* \* \*

We make no finding as to the credibility of the defendant's factual allegations. However, given the serious nature of the allegations, the absence of any explanation from defense counsel as to the facts and circumstances surrounding the allegations, and the fact that the record shows that McGrath was a Will County correctional officer, we hold that the circuit court's determination that the defendant failed to demonstrate *possible* neglect of the case was manifestly erroneous. Accordingly, we find that further proceedings on the defendant's posttrial claims of ineffectiveness are warranted under the circumstances presented in this case." (Emphasis in original.) *Id.* ¶¶ 24-36.

¶ 48        We fully agree with the Third District's sound analysis in *Maya* of the legal issues

- 16 -

that case presented.

¶ 49                    2. *This Case*

¶ 50         At trial, the State's evidence primarily consisted of Leroy Harmon's testimony. Harmon, who was the clerk working at Walgreens at the time of the alleged robbery, testified that defendant approached him, displayed a knife, and demanded money from the cash register. Harmon also testified that he did not know defendant and had never seen him prior to this incident.

¶ 51         Prior to sentencing, defendant alleged that Craig Sullivan had introduced him to Harmon and that they had spoken many times since then. Defendant also claimed that he informed his attorney about this prior to trial. At the *Krankel* hearing, defendant stated that if Harmon "was willing to lie about that, the foundation of everything, then what else was he willing to lie about? So when I brought it up to [my attorney], he told me, like I said, you know, we have other ways to attack credibility. That never happened."

¶ 52         Defendant's attorney admitted at the *Krankel* hearing that he "didn't call Craig Sullivan [as a witness] even though [defendant] absolutely told me about it." Counsel stated that he believed defendant's case was going to "be a battle of narrative" and that "if we don't present any evidence then our whole thing, our whole closing argument, our whole cross-examination" could focus on "that other than Leroy getting on the stand [and] saying that something happened[,] there was no other evidence presented." However, if the State's evidence primarily consisted of Leroy Harmon's testimony, then impeaching that testimony could help win the "battle of narrative" that counsel described. Further, "the complete failure to impeach the sole eyewitness when significant impeachment is available is not trial strategy and, thus, may support an ineffective assistance claim." *People v. Salgado*, 263 Ill. App. 3d 238, 246-47, 635 N.E.2d

1367, 1373 (1994); see also *People v. Zambrano*, 2016 IL App (3d) 140178, ¶ 24, 64 N.E.3d 639 (citing *Salgado* with approval).

¶ 53　　　　Counsel also stated that "if we call Craig Sullivan something must have happened there. And then, you know, if he testifies and starts to admit some facts and then if Craig Sullivan testifies that yes the defendant knows [Leroy Harmon] it helps with ID." Presumably, counsel meant that, if Harmon knew defendant, this would make Harmon's identification of defendant as the robber more persuasive to the jury. However, counsel immediately went on to say "we weren't really challenging ID. It was pretty very clear when he was walking in and when he was coming out they had [a] camera right there at his face." Based on counsel's self-contradictory statements, we conclude that his declining to impeach Harmon may have been an unreasonable trial strategy. See *People v. Manning*, 241 Ill. 2d 319, 348, 948 N.E.2d 542, 559 (2011) (Freeman, J., dissenting, joined by Burke, J.) ("*Strickland's* deferential review of trial strategy does not require courts of review to accept without question that [an attorney's strategic decision] was 'reasonable' trial 'strategy.' ").

¶ 54　　　　As the Third District concluded in *Maya*, 2019 IL App (3d) 180275, ¶¶ 35-36, we conclude that it is clearly evident that defendant's allegations *could* support a claim of ineffective assistance of counsel. See also *Roddis*, 2018 IL App (4th) 170605, ¶ 77. Thus, as in *Maya*, we reverse the trial court's ruling and remand for further proceedings. *Maya*, 2019 IL App (3d) 180275, ¶ 40.

¶ 55　　　　We offer no opinion on the actual merits of defendant's ineffective assistance claim. On remand, we direct the trial court to appoint new counsel to represent defendant on his claim so that counsel may proceed as counsel finds appropriate.

¶ 56　　　　　　　　　　　C. Defendant's Other Claims

¶ 57 In passing, we note that defendant raises numerous other arguments in his first and second appeal. At this time, we decline to address them because they could become moot depending upon the outcome of defendant's ineffective assistance of counsel claims.

¶ 58                                III. CONCLUSION

¶ 59 For the reasons stated, we reverse the trial court's judgment and remand for further proceedings. On remand, we direct the trial court to appoint new counsel to represent defendant on his ineffective assistance claim so that counsel may proceed as counsel finds appropriate.

¶ 60 Reversed and remanded with directions.

**No. 4-18-0452**

| | |
|---|---|
| **Cite as:** | *People v. Lawson*, 2019 IL App (4th) 180452 |
| **Decision Under Review:** | Appeal from the Circuit Court of Vermilion County, No. 14-CF-602; the Hon. Nancy S. Fahey, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, John M. McCarthy, and Mariah K. Shaver, of State Appellate Defender's Office, of Springfield, for appellant. |
| **Attorneys for Appellee:** | Patrick Delfino, David J. Robinson, and Allison Paige Brooks, of State's Attorneys Appellate Prosecutor's Office, of Springfield, for the People. |