NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 240374-U

NO. 4-24-0374

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 16, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| MICHAEL R. HOWARD, | ) | No. 17CF168 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Kevin W. Lyons, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Vancil and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court remanded the cause for a preliminary inquiry into defendant's
*pro se* posttrial claims of ineffective assistance of counsel.

¶ 2    Defendant, Michael R. Howard, appeals his convictions of first degree murder (720

ILCS 5/9-1(a)(3) (West 2016)) and armed robbery (720 ILCS 5/18-2(a)(4) (West 2016)). Although

defendant challenges the judgment on many bases, we agree with his contention that the trial court

failed to conduct an adequate preliminary inquiry into his *pro se* claims of ineffective assistance

of counsel in accordance with the procedure tracing its origins to *People v. Krankel*, 102 Ill. 2d

181 (1984). Accordingly, we remand for a proper preliminary inquiry into defendant's ineffective-

assistance claims and decline to address defendant's other arguments at this time.

¶ 3                        I. BACKGROUND

¶ 4    We provide only the facts necessary to understand the dipositive *Krankel* issue.

¶ 5    On February 28, 2017, defendant, Gemia Shird, and Samantha Gordon drove to Garrison Collins's home. While defendant and Shird remained in the vehicle, Gordon entered Collins's home and went down to the basement, where Collins resided. Eventually, defendant entered the home with a firearm, and Collins sustained a fatal gunshot wound shortly thereafter.

¶ 6    The State's theory was that defendant was involved in a plan to commit an armed robbery against Collins and that defendant shot Collins during the commission of that offense. Accordingly, the State charged defendant with first degree murder under a felony-murder theory (720 ILCS 5/9-1(a)(3) (West 2016)), armed robbery (720 ILCS 5/18-2(a)(4) (West 2016)), and unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2016)). Gordon faced her own charges in separate proceedings, but Shird was never charged.

¶ 7    Defendant's case proceeded to a jury trial in June 2018, at which he was represented by counsel. Gordon testified for the State against defendant, contradicting her previous testimony in her own trial. Shird did not testify. The jury found defendant guilty of all three charges.

¶ 8    On July 18, 2018, defendant filed a *pro se* motion for a new trial. Although the copy of the motion that we have is extremely difficult to read, the trial court later read some of defendant's claims into the record. We discern that defendant alleged ineffective assistance of counsel for six overarching reasons: (1) failing to subpoena Shird as a defense witness; (2) failing to move for a mistrial due to improper comments made by the prosecutor during closing arguments; (3) failing to file a written motion for discovery, file a motion asking the court to review that discovery *in camera*, and have that discovery impounded for purposes of appeal; (4) failing to object to the State not performing a database search including Collins's genetic marker material to determine whether Collins's DNA was on the gun used in the shooting; (5) failing to refute the State's evidence that the absence of stippling showed that Collins was not shot from a close range;

and (6) failing to introduce additional portions of defendant's recorded police interrogation that the State did not play at trial.

¶ 9        On July 18, 2018, the trial court conducted a preliminary *Krankel* inquiry with respect to these claims and determined they lacked a valid basis. The court then sentenced defendant to 47 years in prison for first degree murder, consecutive to a 2-year sentence for unlawful possession of a weapon by a felon. The court did not enter judgment on the armed robbery conviction.

¶ 10        In March 2021, the appellate court affirmed defendant's conviction and sentence for unlawful possession of a weapon by a felon but reversed and remanded for a new trial on the other two counts. *People v. Howard*, 2021 IL App (3d) 180441-U, ¶ 34. The court reasoned that the weapon charge should have been tried separately from the other charges.

¶ 11        On remand, defendant, through counsel, filed motions seeking to suppress his custodial statements and conduct an additional database search including Collins's genetic profile to determine whether Collins's DNA was on the gun used in the shooting. The trial court denied those motions.

¶ 12        The matter proceeded to a second jury trial in July 2023 on the first degree murder and armed robbery charges. Before jury selection began, the trial court mentioned that it received *pro se* filings from defendant dated July 3, 2023. Those filings are not included in the record on appeal. When questioned by the court, defendant expressed dissatisfaction at not having reviewed all the discovery. After some conversation, the court ruled that, to the extent this could be considered a "pre-*Krankel* hearing," defendant's claim was "not well-taken and will be denied."

¶ 13        Unlike the first trial, Shird testified against defendant at the second trial, but Gordon did not testify. The jury found defendant guilty of first degree murder and armed robbery.

¶ 14　　　　　On July 28, 2023, defendant filed a 12-page, *pro se* posttrial motion. Pages 6 through 12 of the motion outlined a series of claims of ineffective assistance of counsel. We discern that defendant alleged his counsel was ineffective for the following 14 overarching reasons: (1) failing to subpoena Gordon as a defense witness; (2) failing to move for a mistrial due to unspecified improper comments made by the prosecutor during closing arguments; (3) failing to file a written motion for discovery, file a motion asking the trial court to review that discovery *in camera*, and have that discovery impounded for purposes of appeal; (4) failing to object to the State not performing a database search including Collins's genetic marker material to determine whether Collins's DNA was on the gun used in the shooting; (5) failing to confront or challenge a witness for the State who failed to swab the barrel of the subject gun for purposes of facilitating DNA testing; (6) failing to challenge or refute the State's evidence—such as through an investigation, cross-examination, calling a defense expert, and use of an autopsy photograph with a clear view—that the absence of stippling showed that Collins was not shot from a close range; (7) failing to subpoena forensic scientist Jason List as a gun expert for the defense; (8) failing to introduce additional portions of defendant's recorded police interrogation that the State did not play at trial; (9) failing to move to reopen defendant's motion to suppress his custodial statements; (10) failing to show defendant the discovery; (11) failing to impeach Shird on four points; (12) failing to file a motion to compel production regarding Shird's deal with the State to testify against defendant; (13) arguing some theory of defense but then failing to offer an unspecified instruction on that theory; and (14) making a closing argument that prejudiced defendant.

¶ 15　　　　　On August 1, 2023, the matter came before the trial court for a hearing on posttrial motions and sentencing. The court first heard and denied a posttrial motion that defense counsel had filed on defendant's behalf, which did not include any ineffective-assistance claims. When the

court said it would proceed to sentencing, defendant interjected that he had filed his own motion. The court addressed and commented on some of defendant's arguments in the first portion of his *pro se* motion filed on July 28, 2023, which did not involve allegations of ineffective assistance. Defendant subsequently directed the court's attention to pages 6 through 12 of that *pro se* motion. The court said it would conduct what it called a "pre-*Krankel* hearing," which would consist of a conversation between defendant and the court. The court stated that this would not be "a conversation between [the prosecutor] or [defense counsel] or me or you." The court told defendant that "to raise a claim that would have strength enough to change lawyers," the court "would have to first be convinced that an adequate claim was made that would provide for that."

¶ 16 The trial court then asked defendant to "give me in your own words what you think you want to tell me in support of your claims." Defendant responded that his allegations in pages 6 through 12 of his motion were "self-explanatory." The court said, "You don't have any thoughts about it? You just want me to read it?" Defendant replied, "I mean, if you want to pick out something we can talk about it." The court asked defendant what "axiomatic" meant, which defendant had used in an introductory paragraph citing boilerplate caselaw about ineffective-assistance claims. The court then asked defendant, "What else do you want to tell me?" Defendant responded, "Whatever you want to talk about. It's there." Defendant suggested that the court should read the motion, and the court said, "I have read it." When defendant expressed doubt that the court had read the motion, the court told defendant to "[d]ial it back." Defendant reiterated that the motion contained his reasons for his ineffective-assistance claims. The court then ruled, "The motion is denied." The court later added, "The defendant has elected to provide no argument with regard to his motion so the motion is denied."

¶ 17 The trial court again sentenced defendant to 47 years in prison for first degree

murder and imposed no sentence for armed robbery. A different judge, Paul P. Gilfillan, denied defendant's postsentence motion. Defendant filed a timely notice of appeal.

¶ 18                                    II. ANALYSIS

¶ 19        Defendant raises numerous issues on appeal, one of which is that the trial court did not conduct a proper preliminary inquiry into his *pro se* claims of ineffective assistance. For the following reasons, we agree and remand the cause for a preliminary inquiry into defendant's claims. We decline to address at this time the other issues defendant raises.

¶ 20        Beginning with our supreme court's decision in *Krankel*, courts have developed a procedure to address *pro se* posttrial claims of ineffective assistance of counsel. *People v. Jackson*, 2020 IL 124112, ¶ 95. Specifically, a court first must "examine the factual basis of the defendant's claim." *People v. Roddis*, 2020 IL 124352, ¶ 35. "If the court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion." *Roddis*, 2020 IL 124352, ¶ 35. "However, if the allegations show possible neglect of the case, new counsel should be appointed." *Roddis*, 2020 IL 124352, ¶ 35. This process of screening a *pro se* claim is often referred to as a "preliminary *Krankel* inquiry." *People v. Jolly*, 2014 IL 117142, ¶ 30. The goal of *Krankel* proceedings is to "facilitate the trial court's full consideration of a defendant's *pro se* claim," thus creating a record and potentially limiting issues raised on appeal. *People v. Ayres*, 2017 IL 120071, ¶ 13.

¶ 21        In conducting this inquiry, " 'some interchange between the trial court and trial counsel regarding the facts and circumstances surrounding the allegedly ineffective representation is permissible and usually necessary in assessing what further action, if any, is warranted on a defendant's claim.' " *Ayres*, 2017 IL 120071, ¶ 12 (quoting *Jolly*, 2014 IL 117142, ¶ 30). Thus, the court may "inquire of trial counsel about the defendant's allegations" and "discuss the

allegations with [the] defendant." *Ayres*, 2017 IL 120071, ¶ 12. The court may also "make its determination based on its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations." *Ayres*, 2017 IL 120071, ¶ 12.

¶ 22 Our standard of review "depends on whether the trial court did or did not determine the merits of the defendant's *pro se* posttrial claims of ineffective assistance of counsel." *Jackson*, 2020 IL 124112, ¶ 98. To that end, we review *de novo* the issue of whether a defendant's allegations triggered a duty to conduct a preliminary *Krankel* inquiry. *People v. Bell*, 2018 IL App (4th) 151016, ¶ 36. Likewise, "[w]hether the trial court properly conducted a *Krankel* preliminary inquiry presents a legal question that we review *de novo*." *Jackson*, 2020 IL 124112, ¶ 98. "However, if the trial court has properly conducted a *Krankel* inquiry and has reached a determination on the merits of the defendant's *Krankel* motion, we will reverse only if the trial court's action was manifestly erroneous." *Jackson*, 2020 IL 124112, ¶ 98. "Manifest error is error that is clearly evident, plain, and indisputable." *Jackson*, 2020 IL 124112, ¶ 98.

¶ 23 Here, defendant advanced approximately 14 ineffective-assistance claims in his *pro se* motion filed on July 28, 2023. Filing that motion and bringing it to the trial court's attention on August 1, 2023, triggered the court's duty to conduct a preliminary *Krankel* inquiry. See *People v. Moore*, 207 Ill. 2d 68, 79 (2003) (noting that to trigger the duty to conduct a preliminary *Krankel* inquiry, "a *pro se* defendant is not required to do any more than bring his or her claim to the trial court's attention"). Thus, the question for our review is whether the court conducted a proper preliminary *Krankel* inquiry.

¶ 24 We hold that the trial court failed to conduct a proper preliminary *Krankel* inquiry on August 1, 2023. Although the court correctly recognized that it needed to conduct what it called a "pre-*Krankel* hearing" and invited defendant generally to make an oral argument in support of

his many written claims, the court never asked defendant or his counsel any questions about specific claims. Rather than addressing the claims, the court seemingly quizzed defendant about whether he knew what the word "axiomatic" meant, a word that defendant had used in the first sentence of a prefatory paragraph as part of boilerplate language about the right to effective assistance of counsel. The court then denied defendant's motion without indicating whether any claim evidenced possible neglect by counsel. The court's only stated reason for its ruling was that "defendant has elected to provide no argument with regard to his motion." We acknowledge that the court, having presided over defendant's two trials, may have recognized that some of the claims raised in defendant's July 28, 2023, motion involved issues that were the same as or similar to matters the court had already addressed. However, from our review of the record, not all the issues that defendant raised in his July 28, 2023, motion had been addressed previously. Ultimately, the way the court handled defendant's claims on August 1, 2023, did not serve the goal of a preliminary *Krankel* inquiry. See *Ayres*, 2017 IL 120071, ¶ 13. The court left issues unresolved, rather than creating a record conducive to determining whether defendant raised any claims that might reflect possible neglect by his counsel.

¶ 25 Specifically, some of the claims in defendant's July 28, 2023, motion were rather vague and would have warranted asking defendant pointed questions to ascertain their factual bases. It is not apparent what the factual bases were for defendant's claims in his motion that his counsel was ineffective for (1) failing to move for a mistrial due to improper comments in the State's closing arguments, (2) arguing a theory of defense and then failing to offer an instruction on that theory, and (3) making a closing argument that prejudiced defendant. On appeal, defendant points to specific examples of portions of the State's closing arguments that he believes were improper and prejudicial, but he did not do so in his *pro se* motion when alleging ineffective

assistance of counsel.

¶ 26          It is also concerning that the trial court seemed to suggest at the outset of its "pre-*Krankel* hearing" that it would not engage defense counsel in the conversation. As mentioned above, it is usually necessary to solicit information from defense counsel during a preliminary *Krankel* inquiry. *Ayres*, 2017 IL 120071, ¶ 12. For example, defendant's contention that his counsel should have "subpoenaed" two particular witnesses would have warranted soliciting a response from defense counsel to ensure that counsel had a reasonable trial strategy for not calling those witnesses. The State mentions in its brief that defense counsel likely declined to call Gordon as a witness because her testimony at defendant's first trial was detrimental to the defense's theory of the case. Although that might be a plausible basis for a trial court to find that this particular claim did not evidence potential neglect, the problem is that the court said only that it denied defendant's *pro se* motion because defendant elected not to provide an argument. Essentially, the State is outlining on appeal what might have been reasonable for the court to find had it actually engaged in a meaningful inquiry with respect to the potential merits of one of defendant's *pro se* ineffective-assistance claims. This line of reasoning defeats the purpose of requiring trial courts to conduct preliminary *Krankel* inquiries (see *Ayres*, 2017 IL 120071, ¶ 13), especially considering that the State does not argue that any error in not fully addressing defendant's ineffective-assistance claims was harmless.

¶ 27          In further defending the trial court's preliminary *Krankel* inquiry on August 1, 2023, the State notes that the court "read defendant's complaint and attempted to engage him in a colloquy to determine whether new counsel should be appointed." In the State's view, defendant "refused to engage" with the court when the court attempted to discuss defendant's allegations. The State also contends that the circumstances did not require the court to "engage in a lengthy

colloquy" or "engage in extensive fact finding," given that (1) defendant's written motion "completely set out his claims in factual detail supported by relevant authority" and (2) the court was familiar with the case. Under the circumstances, the State submits that the court "conducted a proper inquiry before determining defendant's *pro se* claims were meritless, such that appointment of new counsel was not warranted and no remand is necessary."

¶ 28 The State's arguments are unpersuasive. The record does not support the State's position that defendant "refused to engage" with the trial court's attempt to elicit information from him. Rather, although defendant generally rested on the contents of his motion, he also made it clear that he was open to discussing any specific issues attendant to his claims that the court wished to discuss. Certainly, this was not a situation where defendant expressed an intent to abandon the claims in his motion. Moreover, as we already mentioned, some of defendant's claims in his motion either lacked the factual detail necessary to understand the precise nature of his grievances or pertained to matters that may have occurred off the record. Thus, at least *some* discussion with either defendant and/or his counsel about the claims would have been warranted and necessary to create a sufficient record. Ultimately, the State seemingly wants us to assume that the court relied on its own knowledge of the case to make implicit findings that all of defendant's claims were meritless and that it was unnecessary to appoint new counsel for him. Given that the court's only stated reason for denying the *pro se* motion was that defendant elected to provide no argument, we cannot make that assumption.

¶ 29 Accordingly, we remand to the trial court for a proper preliminary *Krankel* inquiry into defendant's *pro se* posttrial claims of ineffective assistance of counsel. Given the number of ineffective-assistance claims that defendant has asserted during various stages of these proceedings, it would be helpful and appropriate for the court on remand to make express findings

as to why each of the claims defendant wishes to advance does or does not reflect possible neglect. We recognize that defendant raises many other issues in this appeal. However, until a trial court completes posttrial proceedings, it is "premature" for an appellate court to address other substantive issues. *People v. Roberson*, 2021 IL App (3d) 190212, ¶ 22; see *People v. Lawson*, 2019 IL App (4th) 180452, ¶ 57 (declining to address the defendant's remaining arguments when the matter had to be remanded for further *Krankel* proceedings); *People v. Wilson*, 2019 IL App (4th) 180214, ¶ 25 (same); *People v. Rhodes*, 2019 IL App (4th) 160917, ¶ 21 (same). This is true even where a defendant raises claims that would bar retrial if successful, such as a challenge to the sufficiency of the evidence. See *Bell*, 2018 IL App (4th) 151016, ¶¶ 24, 37 (declining to address the defendant's challenge to the sufficiency of the evidence where the cause first had to be remanded for the trial court to conduct a preliminary *Krankel* inquiry). Nevertheless, consistent with this court's precedent, we retain jurisdiction over defendant's remaining claims; this means that if defendant is dissatisfied with the outcome of the proceedings on remand, he may appeal again and raise the claims we did not address in this appeal, along with any claims that arise from the proceedings on remand. *Wilson*, 2019 IL App (4th) 180214, ¶ 26.

¶ 30                                    III. CONCLUSION

¶ 31            For the reasons stated, we remand the cause for a proper preliminary *Krankel* inquiry into defendant's *pro se* posttrial claims of ineffective assistance of counsel.

¶ 32            Remanded with directions.