NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250134-U

NO. 4-25-0134

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 27, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| JAKI BELL, | ) | No. 23CF33 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Mary E. Koll, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Grischow and Cavanagh concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The appellate court affirmed, holding the trial court conducted an adequate
preliminary inquiry pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), and
appropriately declined to appoint new counsel.

¶ 2     In October 2023, defendant, Jaki Bell, was found guilty of aggravated battery
following a jury trial and sentenced to seven years in prison. Defendant appealed.

¶ 3     In October 2024, this court remanded for the trial court to conduct an inquiry
pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), into defendant's *pro se* posttrial claims of
ineffective assistance of counsel. *People v. Bell*, 2024 IL App (4th) 240194-U, ¶ 19.

¶ 4     Defendant appeals, arguing the trial court's decision not to appoint new counsel
following its *Krankel* inquiry was manifestly erroneous. We affirm.

¶ 5                                    I. BACKGROUND

¶ 6     In February 2023, the State charged defendant by indictment with aggravated

battery (720 ILCS 5/12-3.05(d)(4)(i) (West 2020)). The indictment alleged, on May 23, 2020, defendant struck Levi Foster with an unknown liquid, knowing Foster was a correctional officer carrying out his duties.

¶ 7 In October 2023, a jury trial was held. The State presented testimony from two correctional officers, Foster and Lucas Nall, and surveillance video from Pontiac Correctional Center. Defendant did not present any evidence.

¶ 8 Foster testified, on May 23, 2020, he was on duty as a correctional officer at Pontiac Correctional Center. At around noon, he was delivering food trays to cells in the south mental health unit, where each cell housed only one inmate. Defendant was housed in cell No. 237 that day. Foster approached cell No. 237 and opened the food hatch in the door. A liquid flew out of the hatch, striking Foster's chest, shoulder, and chin. Foster observed defendant reaching his arm out of the hatch and throwing the liquid. The liquid was brown and smelled like feces. The surveillance video showed Foster and Nall approaching defendant's cell and then staggering back away from the door after appearing to be hit by something. In the video, splatter marks appeared on Foster's shirt and liquid ran down the cell door.

¶ 9 On cross-examination, Foster admitted the food hatch side of the cell and the cell number were not visible on the surveillance video. Foster agreed the inmates were segregated due to mental health issues and suggested most inmates in the unit had disciplinary issues. Counsel asked Foster if "anyone ask[ed] for [his] clothes to run any samples or DNA or anything like that." Foster confirmed his uniform "was not tested for DNA," nor was it "tested to see what the substance was." Foster continued:

"No. Pontiac don't get a lot of funding for clothes. If it was that big of an

ordeal, I would have been able to get new clothes if we had new clothes. I'm a

bigger individual; so, the bigger sizes are not really available to me as often as some other people that are a little bit smaller than me. So, a lot of that stuff you've just got to man up and go wash it or you just don't have a uniform."

¶ 10    Nall testified he was standing directly behind Foster when Foster opened the hatch of cell No. 237. Nall observed defendant throwing "what appeared to be feces" at Foster through the hatch. Foster backed away and Nall attempted to close the hatch. After defendant threw more of the substance from the hatch, both officers backed away.

¶ 11    Following arguments, the jury found defendant guilty of the charged offense. The trial court sentenced defendant to seven years in prison.

¶ 12    Thereafter, defendant filed a *pro se* posttrial motion, arguing his trial counsel was ineffective. No proceedings were had on this motion.

¶ 13    On direct appeal, defendant argued the trial court erred by not conducting a preliminary inquiry into his *pro se* posttrial claims of ineffective assistance of counsel. *Bell*, 2024 IL App (4th) 240194-U, ¶ 9. This court remanded the matter for the trial court to conduct an adequate *Krankel* inquiry. *Id.* ¶ 17.

¶ 14    During the *Krankel* inquiry on remand, defendant raised four claims. He alleged his trial counsel failed to (1) object when a juror was "nodding off" during trial, (2) call a neighboring inmate as a witness, (3) adequately cross-examine Foster, and (4) utilize information from the incident report tendered during discovery. Regarding Foster's cross-examination, defendant stressed counsel should have asked Foster about receiving a new uniform after Foster testified he was not given a change of clothes. According to defendant, an incident report showed Foster was given a new uniform and refused medical treatment after suffering a "minor incident

staff exposure." Defendant argued these points should have been attacked on cross-examination, telling the trial court:

> "If somebody threw feces on me, I would want to see a nurse. I would want to get the tests. I would want to go through all the procedures that the nurse [had] to give me. I would want a hepatitis test. I would want an HIV test. I would want to get my ass washed out. I would like a shower. I would like some new clothes or be sent home or something. [Foster] never left the prison, and he stated on the stand he never got new clothes. The paperwork say[s] something different."

¶ 15   In response to defendant's complaints, counsel stated she did not see a juror sleeping, but after defendant passed her a note, she remained attentive to the jurors. Counsel then explained she investigated the inmate and interviewed him as a potential witness, but the inmate was not housed in a neighboring cell that day and did not witness the incident. Further, counsel stated she adequately examined Foster, and her choice of questions was trial strategy. Last, regarding discovery, counsel explained defendant's disciplinary proceedings were separate from his criminal proceedings and not admissible at trial. Counsel then reiterated she asked all "relevant and appropriate questions" that were necessary in defendant's case. Counsel emphasized her "due diligence in investigating the case," visiting the prison, and taking pictures of defendant's cell after defendant raised an issue about how the cell was set up.

¶ 16   The trial court determined defendant's claims lacked merit. First, the court found no merit to defendant's complaint about the juror, noting counsel had "paid extra attention" and "did not see" what defendant described. Second, the court found no merit to defendant's complaint about counsel not calling the inmate as a witness. Third, the court found defendant's

- 4 -

complaints about Foster's cross-examination were trial strategy, noting it was the decision of counsel, as an "experienced defense attorney," to choose "the best trial strategy," including "the most effective method of cross-examination." The court noted the points defendant wanted counsel to raise in Foster's cross-examination "may have resulted in hurting [him] more." Lastly, the court found defendant's complaints about discovery related back to counsel's trial strategy and Foster's cross-examination, which were not improper. Ultimately, the trial court found all of defendant's claims lacked merit. Accordingly, the court declined to appoint new counsel.

¶ 17    This appeal followed.

¶ 18                                II. ANALYSIS

¶ 19    On appeal, defendant argues the trial court manifestly erred when it declined to appoint new counsel following the preliminary *Krankel* inquiry. Defendant contends he showed possible neglect of the case where trial counsel (1) inadequately cross-examined Foster and (2) failed to utilize evidence uncovered during discovery. We affirm.

¶ 20    As noted above, this court previously remanded for the trial court to conduct a preliminary inquiry into defendant's *pro se* posttrial claims of ineffective assistance of counsel. *Bell*, 2024 IL App (4th) 240194-U, ¶ 19. Pursuant to *Krankel* and its progeny, when a defendant raises a *pro se* posttrial claim of ineffective assistance of counsel, the trial court must conduct an inquiry into the factual basis of the defendant's claim to determine whether new counsel should be appointed to assist the defendant. See *People v. Johnson*, 159 Ill. 2d 97, 124-25 (1994); *People v. Moore*, 207 Ill. 2d 68, 77-78 (2003). If the inquiry discloses "possible neglect of the case," the court must appoint new counsel to represent the defendant at a separate hearing. *Moore*, 207 Ill. 2d at 78. However, "[i]f the court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may

deny the *pro se* motion." *People v. Roddis*, 2020 IL 124352, ¶ 35. When the court has properly conducted a *Krankel* inquiry and reached a determination on the merits of the *Krankel* motion, the court's decision will be reversed only if it was manifestly erroneous. *People v. Jackson*, 2020 IL 124112, ¶ 98. Manifest error is "clearly evident, plain, and indisputable." *Id.*

¶ 21        Here, defendant concedes the trial court on remand conducted a procedurally sound *Krankel* inquiry, allowing defendant to articulate his claims and asking trial counsel to respond. See *People v. Fox*, 2022 IL App (4th) 210262, ¶ 125. However, defendant argues the court manifestly erred when it found none of his claims warranted the appointment of new counsel. Instead, defendant contends he demonstrated possible neglect of the case in trial counsel's (1) cross-examination of Foster and (2) failure to utilize information from discovery.

¶ 22        First, according to defendant, trial counsel should have confronted Foster on cross-examination with facts showing Foster's actions were not consistent with being struck by human feces. Specifically, defendant argues counsel should have questioned Foster about refusing any medical treatment or testing, as well as continuing to work after the incident, to undermine the State's theory of the case. Second, by not addressing these points on Foster's cross-examination or a case-in-chief, defendant argues counsel failed to utilize exculpatory information from discovery. In response to these claims, the State argues defendant was not charged with throwing feces at Foster, only " 'an unknown liquid substance,' " undermining a hypothetical defense theory Foster was not hit with feces.

¶ 23        Generally, examination or impeachment of a witness is considered to be trial strategy, which does not support a claim of ineffective assistance of counsel. *People v. Smith*, 177 Ill. 2d 53, 92 (1997). "A defendant is entitled to competent, not perfect, representation, and

- 6 -

mistakes in trial strategy or judgment will not, of themselves, render the representation ineffective." *People v. Tucker*, 2017 IL App (5th) 130576, ¶ 26.

¶ 24 During cross-examination, Foster admitted his clothes were not tested for DNA and the substance on his clothes was not identified. Although counsel did not ask Foster why he refused testing, Foster himself suggested the incident was not "that big of an ordeal." Counsel did not proceed to ask Foster about receiving a new uniform, continuing to work, or refusing medical treatment. Pursuing these lines of questioning could have amplified the harm Foster suffered and damaged defendant's case. Indeed, as the trial court noted, the points defendant wanted counsel to raise "may have resulted in hurting [defendant] more." Regarding discovery, counsel specified the disciplinary proceedings, as captured in the incident report, were not admissible at trial. Counsel maintained she asked "all the relevant and appropriate questions" necessary in her representation of defendant.

¶ 25 Defendant challenges the trial court's dismissal of his claims as "trial strategy" because reviewing courts have found some strategic decisions to be unreasonable and indicative of possible neglect by trial counsel. In support of his position, defendant cites *People v. Lawson*, 2019 IL App (4th) 180452, where this court held counsel's failure to call a witness indicated possible neglect. In *Lawson*, the defendant informed his attorney about a witness who could impeach the State's primary witness by testifying the State's primary witness knew the defendant prior to the crime. *Id.* ¶ 51. Counsel did not call the proposed witness. *Id.* ¶¶ 51-52. At a *Krankel* inquiry, counsel gave contradictory reasons for not calling the proposed witness, which we concluded may have been an unreasonable trial strategy. *Id.* ¶ 53. Thus, we remanded the matter for the appointment of new counsel and further proceedings. *Id.* ¶ 59.

¶ 26 We find *Lawson* distinguishable from this case. In *Lawson*, counsel's failure to

call the proposed witness raised the possibility of unsound trial strategy. See *People v. West*, 187 Ill. 2d 418, 432-33 (noting an exception to the trial strategy rule "when counsel's chosen trial strategy is so unsound that counsel entirely fails to conduct any meaningful adversarial testing" (internal quotation marks omitted)). Here, defendant challenges his counsel's performance on a cross-examination and her use of discovery materials. The record shows counsel's performance was satisfactory, and counsel provided an explanation at the *Krankel* inquiry for her strategic decisions. Thus, unlike in *Lawson*, counsel's performance did not raise any possibility of an unsound trial strategy.

¶ 27         In sum, we find defendant did not show possible neglect of the case regarding his trial counsel's performance on cross-examination or use of discovery materials. As such, the trial court's decision not to appoint new counsel was not manifestly erroneous.

¶ 28                                    III. CONCLUSION

¶ 29         For the reasons stated, we affirm the trial court's judgment.

¶ 30         Affirmed.