NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 241142-U

NO. 4-24-1142

IN THE APPELLATE COURT

FILED
January 13, 2026
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| DAYNE WOODS, | ) | No. 18CF203 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Rudolph M. Braud Jr., |
| | ) | Judge Presiding. |

PRESIDING JUSTICE STEIGMANN delivered the judgment of the court.
Justices Doherty and Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court remanded for an appropriate preliminary *Krankel* inquiry (see *People v. Krankel*, 102 Ill. 2d 181 (1984)) into defendant's *pro se* posttrial claims of ineffective assistance of counsel.

¶ 2    In June 2024, defendant, Dayne Woods, was convicted of first degree murder (720 ILCS 5/9-1(a)(3) (West 2016)), armed robbery (*id.* § 18-2(a)(1)), home invasion (*id.* § 19-6(a)(1)) and theft (*id.* § 16-1(a)(1)) in connection with the home invasion, robbery, and stabbing death of Dohndre Hughes. Before trial, the trial court denied defendant's motion to suppress statements he made to the police. Following defendant's conviction, he filed a posttrial motion asserting *pro se* claims of ineffective assistance of counsel. Defendant alleged, in relevant part, that his trial counsel rendered ineffective assistance by (1) prohibiting him from providing testimony to support his motion to suppress and (2) failing to investigate various witnesses and evidence, including police body-camera video.

¶ 3		The trial court conducted a preliminary inquiry pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984). During the inquiry, defendant's trial counsel declined to give a statement, and the court asked no questions of counsel. The court denied defendant's motion, finding, without providing details, that the claims were matters of trial strategy.

¶ 4		Defendant appeals, arguing (1) the trial court failed to conduct an adequate *Krankel* inquiry, (2) the court erred by denying his motion to suppress, and (3) trial counsel rendered ineffective assistance when they failed to (a) pursue a claim that the search of defendant's cell phone was involuntary, (b) object to other-crimes evidence, (c) request an instruction on accomplice testimony, and (d) raise an issue regarding the court's lack of admonitions under Illinois Supreme Court Rule 401 (eff. July 1, 1984) before allowing defendant to proceed *pro se* during pretrial proceedings.

¶ 5		We remand for an adequate *Krankel* inquiry.

¶ 6		I. BACKGROUND

¶ 7		In March 2018, the State charged defendant in connection with the February 2018 stabbing death of Hughes. Defendant was taken by police officers to the police station, where he confessed to stabbing Hughes after a lengthy interview with detectives.

¶ 8		A. Pretrial Proceedings

¶ 9		1. *The First Time Defendant Proceeded Pro Se*

¶ 10		In April 2021, during the discovery phase of the case, defendant told the trial court he wished to discharge his privately retained counsel and represent himself. Defendant executed a written waiver of counsel that did not contain the admonitions required by Illinois Supreme Court Rule 401. Instead, it contained a list of admonitions suggested by this court in *People v. Ward*, 208 Ill. App. 3d 1073, 1081-82 (1991), as supplemental admonitions to Rule 401. Defendant proceeded

*pro se* for several months.

¶ 11    In October 2021, defendant retained new counsel, Patricia Hayes, who entered her appearance.

¶ 12    2. *The Motion To Suppress*

¶ 13    In October 2022, defendant, through Hayes, filed a motion to suppress his statements to the police. The motion alleged that defendant was interviewed for over five hours before he was given *Miranda* warnings (see *Miranda v. Arizona*, 384 U.S. 436 (1966)). The motion also alleged defendant was sleep deprived and intoxicated during the interview, which took place in a locked interrogation room. Last, the motion alleged defendant previously worked with Detective Kenneth Young as a confidential informant and that detectives used that relationship to elicit a false confession from defendant.

¶ 14    Defendant provided an affidavit stating he was intoxicated when he was questioned by the police. He stated Young contacted him and told him the police wanted to talk to him about a homicide but he was not a suspect. According to defendant, Young told him it would be a quick process. Young and another officer picked up defendant. Defendant averred he told the officers he was intoxicated. Defendant stated he was taken to an underground parking garage at the police station, was patted down and searched, used an elevator, went through multiple doors, and was placed in a locked interrogation room. Defendant averred he again told officers he was intoxicated, but they had not yet turned on video-recording equipment in the interrogation room at that time. Defendant asserted the officers denied his requests to leave and refused to answer when he asked if he was free to leave. Defendant eventually confessed and allowed his cell phone to be searched due to threats and coercion.

¶ 15    3. *The Second Time Defendant Proceeded Pro Se*

¶ 16 Shortly after filing the motion to suppress, Hayes withdrew as counsel based on difficulties between her and the Sangamon County state's attorney, who had filed a motion to disqualify her, as well as a complaint with the Attorney Registration and Discipline Commission. Hayes stated she felt her presence in the case was hurting defendant. Defendant agreed and requested to represent himself. The trial court obtained from defendant another written waiver of counsel, which was identical to the first. Neither the written form nor the court gave the Rule 401 admonitions during this process.

¶ 17                     4. *The Hearing on the Motion To Suppress*

¶ 18 Defendant *pro se* filed a supplemental brief in support of his motion to suppress and later filed a supplemental motion to suppress, along with a motion to quash arrest and to exclude evidence found on his cell phone. Defendant again alleged he was lured to the police station under false pretenses for an interview while he was under the influence of drugs and alcohol and that he was placed in a locked interrogation room and interrogated for over five hours, during which he attempted to assert his right to remain silent and requested to leave.

¶ 19 In December 2022 and January 2023, the trial court conducted a hearing on defendant's motion to suppress. Defendant represented himself at that hearing, at which Young testified that he and another officer took defendant to the police station to be interviewed. Young denied searching defendant and said defendant was placed in an unlocked room. He said defendant would have been required to have an escort to use the restroom or leave the room. Young stated he recalled defendant being intoxicated but did not recall that defendant advised the officers of that fact. Russell Lehr, a detective who interviewed defendant, testified defendant did not appear to be intoxicated. During the interview, defendant was persuaded to allow officers to search his cell phone. Officers reported multiple delays to defendant regarding the search of the phone.

Defendant was not given *Miranda* warnings until after evidence was obtained from his cell phone.

¶ 20    During the hearing, the trial court repeatedly sustained the State's objections to defendant's questioning of witnesses. Defendant unsuccessfully attempted to impeach witnesses with documents and unsuccessfully attempted to elicit testimony about (1) various investigative techniques and (2) the lack of a recording of defendant entering the interrogation room. The trial court stated on at least two occasions it was sustaining objections because defendant was not asking the right questions and advised defendant that the court could not tell him the correct questions to ask.

¶ 21    Defendant told the trial court he was going to testify, and the court swore him in to do so. The State objected to defendant's testifying based on its belief that the proper procedure would be for defendant to ask himself questions and provide an opportunity for the State to object before he answered. The court suggested defendant consider obtaining counsel and continued the hearing.

¶ 22    When the hearing was reconvened, the trial court told defendant he would have to write out his questions and answers in advance. The court again raised the possibility of defendant's obtaining counsel. The court continued the matter for defendant to write out his questions and answers or to file a written motion requesting counsel.

¶ 23    5. *Defendant Hires New Counsel, Victoria Kerr and Michael Harmon*

¶ 24    A few days later, defendant informed the trial court he would be hiring a private attorney. Shortly thereafter, Attorneys Victoria Kerr and Michael Harmon entered their appearance.

¶ 25    During the next year, counsel obtained discovery and pursued plea negotiations. As part of discovery, counsel requested the State produce any available body-camera videos. Counsel

also filed a memorandum in support of the motion to suppress but did not seek to present any further evidence on that motion.

¶ 26        While represented by counsel, defendant *pro se* filed multiple documents, including a new motion to suppress evidence that included a request for an evidentiary hearing. Defendant also *pro se* filed discovery requests for body-camera videos and evidence of disciplinary actions taken against officers whom the State planned to call as witnesses.

¶ 27            *6. The Trial Court's Ruling on the Motion To Suppress*

¶ 28        In March 2024, the State advised the trial court that plea negotiations had broken down and a ruling on the motion to suppress was needed. The trial court then denied the motion, finding that defendant voluntarily went to the police station, he was not under arrest, and the fact that he was not free to walk around the police station did not make the encounter custodial. The court also found the detectives provided *Miranda* warnings at the proper point in time.

¶ 29            *7. The Motion To Allow Other-Crimes Evidence*

¶ 30        The State filed a motion *in limine*, seeking the admission of evidence that defendant had committed a similar robbery and home invasion shortly before Hughes's murder. The State alleged the evidence was admissible to show knowledge, motive, identity, opportunity, intent, design, plan, and a continuing narrative of the case. Defense counsel objected. The trial court granted the motion and ultimately instructed the jury the evidence was allowed to show intent and design.

¶ 31                B. The Jury Trial

¶ 32        In June 2024, the trial court conducted defendant's jury trial. The State presented evidence defendant and a codefendant, Mark Meszaros, impersonated police officers and invaded Hughes's home, seeking to rob Hughes of drugs and money. During the incident, Hughes was

stabbed and killed. The State also presented evidence defendant had previously committed a similar home invasion and robbery. Meszaros testified against defendant. Katherine Smith, another person involved in the incident, also testified against defendant. Lehr testified about defendant's interview and confession. Evidence from defendant's cell phone was admitted into evidence. The jury found defendant guilty.

¶ 33                                            C. Posttrial Proceedings

¶ 34                                            1. *The Motion for a New Trial*

¶ 35        In July 2024, defense counsel filed a motion for a new trial, alleging the trial court erred when it (1) denied defendant's motion to suppress and (2) admitted other-crimes evidence. Counsel also argued the evidence was insufficient to convict defendant beyond a reasonable doubt.

¶ 36                                            2. Krankel *Proceedings*

¶ 37        Also in July 2024, defendant *pro se* filed a "supplemental" motion for a new trial that included allegations of ineffective assistance of counsel. Included with the motion was an exhibit of a letter from the State dated April 22, 2024, denying a request defendant made under the Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2024)) stating that body-camera video associated with defendant's transport to the police station for his interview had been turned over to his defense counsel during discovery. Also attached was a letter dated May 13, 2024, stating that a request to resend discovery materials to Kerr and Harmon as defendant's current counsel was granted. The letter showed a list of discovery materials that had been sent to counsel.

¶ 38        Defendant subsequently filed a *Krankel* motion seeking the appointment of conflict counsel. In his motion, defendant alleged Kerr and Harmon rendered ineffective assistance by denying him the right to testify in support of his motion to suppress. Defendant alleged (1) he repeatedly told counsel he wanted to testify and (2) counsel argued with him, ultimately saying

they were not going to let him do so. He alleged their refusal made it impossible for him to provide testimony about his arrest, transport to the police station, and interrogation to show he was intoxicated and not free to leave. Defendant alleged his testimony would have established that he told officers multiple times he was intoxicated, was arrested, passed through locked doors, was threatened, and told officers he wanted to leave.

¶ 39     Defendant also alleged counsel rendered ineffective assistance by failing to (1) raise constitutional speedy-trial issues, (2) investigate body-camera video showing defendant's transport to the interview with police, (3) challenge defendant's consent to search his phone, (4) move to suppress seized evidence, (5) effectively challenge the admission of other-crimes evidence, (6) object to a grant of immunity to a witness, (7) impeach or investigate multiple witnesses, such as failing to impeach Lehr with evidence of an investigation and disciplinary proceedings against Lehr concerning his interview with defendant, (8) tender a jury instruction regarding accomplice testimony, (9) investigate a witness who would rebut the State's evidence concerning the use of " 'police gear' " in the crimes, (10) object to various trial questions or testimony, (11) effectively conduct plea negotiations, and (12) withdraw as counsel when there was a breakdown in communications.

¶ 40     At the preliminary *Krankel* inquiry, the trial court initially allowed defendant to speak at length. Regarding the denial of his right to testify in support of the motion to suppress, defendant told the court that counsel advised him not to testify when he made his intention to testify clear. Defendant said he argued with counsel about the matter and counsel told him he would not be allowed to testify. Defendant argued that denial prevented him from effectively challenging the State's evidence presented at the hearing on the motion to suppress.

¶ 41     In response, the trial court stated, "You never once pounded that desk and said you

wanted to testify during those suppression hearings," and, "[Y]ou never said anything." Defendant attempted to respond, but the court cut him off, stating, "You were represented by counsel." Defendant attempted to reply, and the court cut him off again.

¶ 42　　　　Defendant also argued he asked Kerr and Harmon about the body-camera video and the FOIA response. Defendant said they told him they did not have the video and on other occasions said that the video did not exist, despite the letter regarding the FOIA request showing that it did exist. Defendant stated he asked counsel many times to obtain the video because it would support his version of the events that happened during his transport to be interviewed, which would show he was intoxicated and the police took actions showing he was under arrest and not free to leave. Defendant also said he asked counsel to pursue making the video part of the record and allow defendant to testify about the matter in order to obtain a fair suppression hearing and make a record. Defendant stated counsel refused to investigate and instead proceeded to obtain a ruling on the motion to suppress without taking any action on the issue.

¶ 43　　　　Defendant addressed additional issues, and the trial court, on multiple occasions, accused defendant of merely reading back his motion. The court told defendant to "just hit the high points." Defendant told the court he was not reading everything. On another occasion, defendant stated he was just reading the headings. After defendant addressed about half of the points in his motion, the court stated, "Listen, I keep telling you I've read all of it." The court then cut short defendant's presentation of his argument, stating, "I've read everything. At this point I'm going to give it to [Kerr]." The following colloquy then occurred:

　　　　　　"THE COURT: You can have the voice now, [Kerr]. Go right ahead. What's your response thus far?

　　　　　　[KERR]: Nothing.

THE COURT: No response?

[KERR]: I mean, I have nothing to say. I mean, there's a record of my and [Harmon's] performance at the trial. And with regard to pre-trial hearings, those are also transcribed. So, I would let any and all narratives and strategy and anything that [Harmon] and I put into the record speak for itself."

¶ 44 The trial court did not ask Kerr any questions. The court told defendant to "[w]rap this up for me." Defendant said he wanted to address another point and asked if he could make an offer of proof with an affidavit regarding a matter he alleged counsel did not investigate concerning Meszaros. The court did not allow that, stating it "would be highly improper" for the court to consider it. The court repeated it had read defendant's motion. Defendant expressed concern he was not being allowed to fully provide his allegations to the court or make a record. The court allowed defendant to begin addressing another point but then called a recess in order to attend to another matter. When the court returned, it told defendant he had five minutes to "wrap this up" and told defendant to choose his best points to highlight. Defendant addressed in part a few more claims, but the court interrupted to repeat it had read his motion.

¶ 45 Without addressing any of the specific claims in the motion or providing specific reasoning regarding each claim, the trial court found all of the matters raised in defendant's motion were matters of trial strategy and denied the appointment of conflict counsel.

¶ 46 The trial court also denied defendant's motions for a new a trial and sentenced defendant to concurrent terms of 37 years imprisonment for first degree murder, 20 years for armed robbery, 20 years for home invasion, and 5 years for theft. Defendant's motion to reduce his sentence was also denied.

¶ 47 This appeal followed.

¶ 48                                II. ANALYSIS

¶ 49          Defendant appeals, arguing (1) the trial court failed to conduct an adequate *Krankel* inquiry, (2) the court erred by denying his motion to suppress, and (3) trial counsel rendered ineffective assistance when they failed to (a) pursue a claim that the search of defendant's cell phone was involuntary, (b) object to other-crimes evidence, (c) request an instruction on accomplice testimony, and (d) raise an issue regarding the court's lack of admonitions under Illinois Supreme Court Rule 401 (eff. July 1, 1984) before allowing defendant to proceed *pro se* during pretrial proceedings.

¶ 50          Because we agree that the trial court failed to conduct an adequate preliminary *Krankel* inquiry, we remand for the court to conduct the appropriate inquiry.

¶ 51                            A. *Krankel* Claims

¶ 52          Defendant contends the trial court erred by failing to appoint new counsel to investigate his claims of ineffective assistance of trial counsel after completing its preliminary *Krankel* inquiry. In particular, he argues the court did not inquire at all into matters outside of the record involving the failure of counsel to investigate documents and witnesses, the existence of police body-camera video, and counsel's refusal to present defendant's testimony in support of the motion to suppress.

¶ 53                    1. *The Applicable Law Regarding* Krankel *Proceedings*

¶ 54          A *pro se* posttrial claim alleging ineffective assistance of counsel is governed by the common law procedure developed by the supreme court in *Krankel* and its progeny. *People v. Roddis*, 2020 IL 124352, ¶ 34. "The procedure encourages the trial court to fully address these claims and thereby narrow the issues to be addressed on appeal." *Id.* Under this procedure, the court does not automatically appoint new counsel when a defendant alleges ineffective assistance

of counsel; instead, the court first examines the factual basis of the defendant's claim. *Id.* ¶ 35. Specifically, the trial court must conduct an adequate inquiry, that is, an inquiry sufficient to determine the factual basis of the claim. *People v. Ayres*, 2017 IL 120071, ¶ 11. In doing so, the court considers the merits of the defendant's allegations in their entirety. *Roddis*, 2020 IL 124352, ¶ 61.

¶ 55        If the trial court determines the claims lack merit or pertain only to matters of trial strategy, the court need not appoint new counsel and may deny the defendant's *pro se* claims. *Id.* ¶ 35. "However, if the allegations show possible neglect of the case, new counsel should be appointed." *Id.* Doing so permits new counsel to independently evaluate the defendant's claims, while avoiding the conflict of interest trial counsel would otherwise have, and new counsel would represent the defendant at a hearing on the *pro se* ineffective assistance of counsel claims. *Id.* ¶ 36. "[T]he goal of any *Krankel* proceeding is to facilitate the trial court's full consideration of a defendant's *pro se* claims of ineffective assistance of trial counsel and thereby potentially limit issues on appeal." *People v. Jolly*, 2014 IL 117142, ¶ 29.

¶ 56        Whether a trial court properly conducted a preliminary *Krankel* inquiry presents an issue we review *de novo*. *Id.* ¶ 28. However, we review a trial court's decision declining the appointment of new counsel following an adequate inquiry for manifest error. *People v. McCarter*, 385 Ill. App. 3d 919, 941 (2008). "Manifest error is that which is 'clearly evident, plain, and indisputable.' " *People v. Johnson*, 206 Ill. 2d 348, 360 (2002) (quoting *People v. Ruiz*, 177 Ill. 2d 368, 384-85 (1997)).

¶ 57        A trial court's method of inquiry at a preliminary *Krankel* proceeding is flexible. *People v. Flemming*, 2015 IL App (1st) 111925-B, ¶ 85.

"A reviewing court should consider three factors when determining whether

a *Krankel* inquiry was sufficient: (1) whether there was some interchange between the trial court and defense counsel regarding the facts and circumstances surrounding the allegedly ineffective representation, (2) the sufficiency of defendant's *pro se* allegations of ineffective assistance, and (3) the trial court's knowledge of defense counsel's performance at trial and the sufficiency of the defendant's allegations on their face." *People v. Schnoor*, 2019 IL App (4th) 170571, ¶ 71.

¶ 58 "None of these factors are mandatory, and no bright-line rule exists about what is a sufficient inquiry and what is not." *Id.* However, during the preliminary inquiry, " 'some interchange between the trial court and trial counsel regarding the facts and circumstances surrounding the allegedly ineffective representation is permissible and usually necessary in assessing what further action, if any, is warranted on a defendant's claim.' " *Jolly*, 2014 IL 117142, ¶ 30 (quoting *People v. Moore*, 207 Ill. 2d 68, 78 (2003)). When a defendant's claims of ineffective assistance of counsel are based on matters outside the record and the trial court failed to conduct an adequate *Krankel* inquiry, the proper remedy is to remand the matter to the trial court for the limited purpose of allowing the trial court to conduct the required inquiry. *People v. Willis*, 2013 IL App (1st) 110233, ¶ 74.

¶ 59 2. *Ineffective Assistance of Counsel*

¶ 60 A defendant claiming ineffective assistance of counsel must demonstrate that (1) counsel's performance fell below an objective standard of reasonableness and (2) a reasonable probability exists that, but for the deficient performance, the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

¶ 61 The decision to testify at trial belongs to the defendant but should be made with the

advice of counsel. *People v. McCleary*, 353 Ill. App. 3d 916, 922-23 (2004). However, Illinois lacks precedent regarding whether a defendant's right to decide whether to testify extends to a pretrial suppression hearing. *People v. Maury*, 2025 IL App (4th) 220887, ¶ 174. Generally, "[a]dvice not to testify is a matter of trial strategy and does not constitute ineffective assistance of counsel unless evidence suggests counsel refused to allow the defendant to testify." *McCleary*, 353 Ill. App. 3d at 923. Matters of trial strategy are generally immune from claims of ineffective assistance of counsel. *People v. West*, 187 Ill. 2d 418, 432 (1999). However, there is an exception to this rule when counsel's chosen trial strategy is so unsound that counsel entirely fails to conduct any meaningful adversarial testing. *Id.* at 432-33.

¶ 62          "An attorney who fails to conduct reasonable investigation, fails to interview witnesses, and fails to subpoena witnesses cannot be found to have made decisions based on valid trial strategy." *People v. Makiel*, 358 Ill. App. 3d 102, 107 (2005). "Attorneys have an obligation to explore all readily available sources of evidence that might benefit their clients." *Id.* Thus, "[f]ailure to conduct investigation and develop a defense has been found to be ineffective assistance." *Id.* However, counsel is only under a duty to make reasonable investigations, or a reasonable decision that makes particular investigations unnecessary, and counsel's judgment on those matters is entitled to a heavy measure of deference. *People v. Pecoraro*, 175 Ill. 2d 294, 324 (1997). An attorney is not ineffective by forgoing additional investigation where circumstances known to him or her at the time of investigation do not reveal a sound basis for further inquiry in a particular area. *Id.* In addition, the decision whether to call particular witnesses is a matter of trial strategy and will not ordinarily support an ineffective-assistance-of-counsel claim. *People v. Marshall*, 381 Ill. App. 3d 724, 733 (2008).

¶ 63                    B. This Case

- 14 -

¶ 64        Based on our review of the record, we conclude the trial court's inquiry was inadequate because it failed to produce an objective record to assess some of defendant's ineffective-assistance-of-counsel claims. Although the court understood the need to conduct the inquiry and allowed defendant to speak at length, it failed to ask defense counsel any specific questions regarding the factual basis of claims that were based on facts outside of the record. The court also appeared to rely on erroneous facts.

¶ 65        In particular, the record shows defendant specifically sought to testify in support of his *pro se* motion to suppress. When defendant attempted to provide testimony, he repeatedly faced roadblocks to effectively doing so and then sought to hire counsel. The context of defendant's retention of counsel at that point suggests he did so for the purpose of being able to effectively testify both in support of the motion to suppress and at trial. Yet, according to defendant, counsel refused to allow him to testify in support of the motion to suppress and instead proceeded to allow the matter to be decided without providing further evidence.

¶ 66        At the *Krankel* proceeding, defendant alleged he could provide testimony to challenge the State's claims he was not intoxicated or arrested and was free to leave during his interrogation, such that the decision not to further pursue the motion to suppress would not be a reasonable trial strategy. Defendant's allegations were unrebutted at the *Krankel* inquiry because the trial court did not question Kerr about the matter and instead allowed her to stand on the record, which did not explain her decision-making process.

¶ 67        Further, the trial court appeared to dismiss defendant's claim based on incorrect facts. In response to defendant's argument, the court stated, "You never once pounded that desk and said you wanted to testify during those suppression hearings," and, "[Y]ou never said anything." Defendant attempted to respond, and the court cut him off, stating, "You were

represented by counsel." Defendant attempted to respond again, and the court again cut him off. But defendant was acting *pro se* at the hearing on the motion to suppress and not only specifically stated his desire to testify, but also was actually sworn in and attempted to do so. He then hired counsel based on the difficulties he encountered with being able to provide his testimony while acting *pro se*. To the extent the court may have been referring to a lack of any further request by defendant after he retained counsel, defendant also filed a new *pro se* motion to suppress, seeking an evidentiary hearing while represented by counsel. A defendant represented by counsel generally has no authority to file *pro se* motions. *People v. Williams*, 2021 IL App (3d) 190082, ¶ 22. However, defendant's filing indicates he had a continuing desire to provide evidence in support of the motion to suppress.

¶ 68        Given the lack of questions to counsel and the trial court's possible reliance on incorrect facts, we are left with unanswered questions that are material to the analysis. For example, if defendant was merely advised by his counsel not to testify and defendant accepted that advice as trial strategy, he could not show ineffective assistance of counsel. However, if defendant was advised by his counsel that he did not have the right to testify or his counsel prohibited him from testifying, his right to effective assistance may have been violated. See *People v. Patton*, 2022 IL App (4th) 210561, ¶ 117. Under these circumstances, an inquiry with counsel about the matter was necessary before determining the issue lacked merit or was a matter of trial strategy. See *People v. McKinney*, 2023 IL App (4th) 220356, ¶ 36.

¶ 69        We note again that Illinois lacks precedent regarding whether a defendant's right to decide whether to testify extends to a pretrial suppression hearing. *Maury*, 2025 IL App (4th) 220887, ¶ 174. However, we need not determine if the right extends to such a hearing at this juncture because the trial court's failure to inquire about the issue with counsel leaves the record

insufficient to fully determine if a legal question regarding the matter actually exists.

¶ 70　　　　Moreover, even if we were to determine defendant had no absolute right to testify at the suppression hearing, there remains a lack of inquiry into whether any denial of defendant's ability to testify was based on a reasonable trial strategy. This court has rejected the suggestion that a court need not inquire into matters which ordinarily relate to trial strategy. *People v. Jackson*, 2025 IL App (4th) 241372-U, ¶ 37. The fact that a *pro se* claim of ineffective assistance is based on a matter which ordinarily relates to trial strategy does not permit a court to reject that claim without further inquiry when necessary. *Id.* Because the trial court did not inquire into the issue with counsel and appeared to rely on incorrect facts, we conclude that the trial court conducted an inadequate inquiry into defendant's claim counsel unreasonably prevented him from providing testimony in support of his motion to suppress.

¶ 71　　　　Similarly, we note defendant made additional claims regarding matters outside of the record that went unaddressed. In particular, defendant discovered through a FOIA request that body-camera video existed showing his transport to the police station to be interviewed. According to defendant, he brought the matter up with counsel, who made it clear they did not obtain the video. Defendant claims the video would support his assertions he was intoxicated and under arrest. If counsel failed to investigate the video and it showed what defendant claims it does, that failure to investigate could show possible neglect of the case regarding the motion to suppress. However, the trial court did not inquire with counsel about the issue, again leaving defendant's assertions uncontradicted and the record insufficient to fully evaluate the claim.

¶ 72　　　　Further, the trial court did not inquire about other allegations outside of the record, such as defendant's allegations counsel failed to investigate witnesses or impeachment evidence. The trial court gave a blanket reason for its denial that all the issues were matters of strategy. But,

without questioning counsel, the court improperly assumed defendant's allegations all went to matters of strategy without full knowledge of the underlying facts.

¶ 73 Ultimately, the way the trial court handled defendant's claims did not serve the goal of a preliminary *Krankel* inquiry. See *People v. Ayres*, 2017 IL 120071, ¶ 13; *People v. Howard*, 2025 IL App (4th) 240374-U, ¶ 24. Instead of creating a record conducive to determining whether defendant raised any claims that might reflect possible neglect by his counsel, the court left issues unresolved. We recognize defendant had a history of presenting numerous and lengthy *pro se* pleadings and arguments, and the court certainly had a legitimate interest in reigning in unnecessary or unduly long arguments and proceedings. However, the issues with the *Krankel* inquiry here could have been avoided had the court questioned counsel about matters outside of the record or appointed new counsel to investigate defendant's claims instead of merely accepting her silence on the issues.

¶ 74                              C. Remand and Retention of Jurisdiction

¶ 75 Accordingly, we remand for the trial court to conduct a proper preliminary *Krankel* inquiry into defendant's *pro se* posttrial claims of ineffective assistance of counsel. Given the number of ineffective-assistance claims defendant has asserted during various stages of the proceedings, it would be helpful and appropriate for the court on remand to also make express findings as to why each claim defendant wishes to advance does or does not reflect possible neglect. See *Howard*, 2025 IL App (4th) 240374-U, ¶ 29.

¶ 76 We recognize that defendant raises many other issues in this appeal, including issues of ineffective assistance of counsel that he did not include in his original *Krankel* motion. However, until the trial court fully resolves the *Krankel* proceedings, it is premature for an appellate court to address other substantive issues. *People v. Roberson*, 2021 IL App (3d) 190212,

¶ 22; *People v. Lawson*, 2019 IL App (4th) 180452, ¶ 57. Depending on the result of the preliminary *Krankel* inquiry, defendant's other claims may become moot. *People v. Bell*, 2018 IL App (4th) 151016, ¶ 37. Nevertheless, consistent with this court's precedent, we retain jurisdiction over defendant's remaining claims; this means that if defendant is dissatisfied with the outcome of the proceedings on remand, he may appeal again and raise the claims we did not address in this appeal, along with any claims that arise from the proceedings on remand. *People v. Wilson*, 2019 IL App (4th) 180214, ¶ 26.

¶ 77                                     III. CONCLUSION

¶ 78        For the reasons stated, we remand for a proper preliminary *Krankel* inquiry into defendant's *pro se* posttrial claims of ineffective assistance of counsel.

¶ 79        Remanded with directions.