NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250783-U

NO. 4-25-0783

IN THE APPELLATE COURT

FILED
June 12, 2026
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Ford County |
| ARTHURO L. CRAWFORD, | ) | No. 22CF101 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Matthew J. Fitton, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Knecht and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court remanded the cause for a proper preliminary *Krankel* inquiry
(see *People v. Krankel*, 102 Ill. 2d 181 (1984)) into two of defendant's *pro se* claims
of ineffective assistance of counsel.

¶ 2    In 2023, defendant, Arthuro L. Crawford, was convicted of criminal sexual assault

(720 ILCS 5/11-1.20(a)(1) (West 2022)), unlawful restraint (720 ILCS 5/10-3 (West 2022)), and

two counts of aggravated domestic battery (720 ILCS 5/12-3.3(a), (a-5) (West 2022)). In 2024, we

remanded the cause to the trial court for a "preliminary inquiry into defendant's unaddressed *pro se*

posttrial claims of ineffective assistance of counsel" pursuant to the standards articulated in *People*

*v. Krankel*, 102 Ill. 2d 181 (1984), and its progeny. *People v. Crawford*, 2024 IL App (4th)

230292-U, ¶ 2.

¶ 3    On remand, the trial court conducted an inquiry, allowing defendant to articulate

his ineffective-assistance claims in open court. However, rather than requiring defendant's trial

counsel to be present during this inquiry to respond to defendant's specific grievances and answer any questions the court might have, the court accepted a conclusory affidavit from counsel filed in advance that did not address many of the points defendant raised. Ultimately, the court declined to appoint new counsel to represent defendant in connection with any of his ineffective-assistance claims. Defendant appeals again, and one of his arguments is that we should remand the cause a second time due to errors in the *Krankel* proceedings.

¶ 4       We hold that the trial court did not conduct a sufficient preliminary inquiry into two of defendant's claims of ineffective assistance of counsel: (1) failing to investigate whether certain records and surveillance videos could be helpful evidentiary material for the defense and (2) falling asleep during trial. With respect to those two claims, the court's failure to solicit input from defendant's counsel and make specific findings leaves us with an insufficient record to evaluate whether it is possible that defense counsel neglected his duties. Thus, we are compelled to remand the cause a second time for a proper preliminary *Krankel* inquiry into those two claims.

¶ 5                                I. BACKGROUND

¶ 6                    A. The Charges, Trial, and Posttrial Proceedings

¶ 7       The charges against defendant arose from A.H.'s allegations relating to events occurring at her home in early September 2022, where she had recently allowed defendant to reside. The matter proceeded to a jury trial in January 2023, before the parties received the results of forensic testing on various items in the home that were apparently bloodstained. Prior to selecting a jury, defendant personally acknowledged on the record that he agreed to stipulate that A.H. was diagnosed with injuries requiring surgery after she presented for medical treatment on September 6 and 7, 2022.

¶ 8       In brief summary, the State's evidence showed the following. A.H. became upset

with defendant on the night of Thursday, September 1, 2022, when she found a picture of him with another woman. Before A.H. left for work on the morning of September 2, 2022, defendant forced his penis into her mouth because she refused to have sex with him. Throughout that day, defendant called and texted A.H. incessantly. Over the course of the ensuing weekend, defendant battered A.H. severely and prevented her from leaving her home through direct threats and menacing behavior, including brandishing a gun and taking possession of her phone. A.H. finally managed to escape the residence before midnight on September 4, 2022, when defendant started to fall asleep. She alerted a neighbor to her ordeal, who contacted the police.

¶ 9　　　　The record reflects that after the trial court denied defendant's motion for a directed verdict, defense counsel had the opportunity to speak with defendant for about an hour. When the parties reconvened in open court outside the presence of the jury, defendant expressed dissatisfaction with his attorney. One of his complaints was that he wished to have evidence presented on his own behalf. Defendant's counsel responded that (1) much of what defendant told him related to irrelevant issues and (2) counsel had explained to defendant on many occasions that he could testify on his own behalf to address his interactions with A.H. pertaining to the charges. After a lengthy colloquy, the court took a recess to give defendant another opportunity to speak with his counsel.

¶ 10　　　　Defendant then testified on his own behalf, denying the charges. On cross-examination, the prosecutor impeached defendant, including by confronting him with numerous text messages he sent A.H. that contradicted the testimony from his direct examination. The jury found defendant guilty of all charges.

¶ 11　　　　On March 14, 2023, the trial court denied defendant's posttrial motion. Defendant then complained in open court about various matters, including that he "never had the opportunity

to see any of the evidence" and that his counsel did not visit him. The court did not give defendant an opportunity to explain his grievances in further detail. The matter then proceeded to a sentencing hearing, during which defendant interrupted the proceedings and was removed from the courtroom. The court sentenced defendant to 15 years in prison for criminal sexual assault, to be served concurrently with 7-year prison sentences for both aggravated domestic battery counts and a 6-year prison sentence for unlawful restraint.

¶ 12		On March 27, 2023, the clerk of the circuit court received a handwritten letter from defendant containing allegations that his counsel was ineffective. Among defendant's complaints were that he "wasn't able to gather *any* evidence to support [his] defense" and his counsel did not "fulfill any of [his] request [*sic*] to gather [his] evidence." (Emphasis in original.) The trial court did not address defendant's complaints directed against his counsel.

¶ 13		B. Defendant's First Appeal

¶ 14		In defendant's first appeal, we "remand[ed] the cause for a preliminary *Krankel* inquiry into defendant's unaddressed *pro se* posttrial claims of ineffective assistance of counsel." *Crawford*, 2024 IL App (4th) 230292-U, ¶ 20. We reasoned that "the trial court's duty to conduct a preliminary *Krankel* inquiry was triggered twice, after the denial of defendant's motion for a new trial and in defendant's *pro se* letter to the trial judge." *Crawford*, 2024 IL App (4th) 230292-U, ¶ 16. In our order, we outlined the required procedures and legal standards that would govern that preliminary inquiry. *Crawford*, 2024 IL App (4th) 230292-U, ¶¶ 13-14. In light of the remand for that limited purpose, we declined to address the other claims defendant raised on appeal. *Crawford*, 2024 IL App (4th) 230292-U, ¶ 18.

¶ 15		C. The Proceedings on Remand

¶ 16		On remand, the trial court corrected an error by reducing defendant's sentence for

unlawful restraint from six years in prison to three years in prison. On September 25, 2024, the court seemed to be confused about the status of the case. Rather than setting the matter for a "preliminary *Krankel* inquiry" (see *Crawford*, 2024 IL App (4th) 230292-U, ¶ 20), the court set the matter for a "*Krankel* hearing" on December 19, 2024, and appointed a new attorney for defendant, who already represented him in connection with other pending cases.

¶ 17        The record does not contain a report of proceedings from December 19, 2024. The docket entry from that day says that the "*Krankel* Hearing- first stage" was continued to February 25, 2025, because defendant's trial counsel was unavailable. The record likewise does not contain a report of proceedings from February 25, 2025. The docket entry from that day says that the hearing was vacated, defendant's trial counsel was directed to file an affidavit with respect to defendant's ineffective-assistance claims, and the "*Krankel* Hrg." was continued to May 13, 2025.

¶ 18        On May 12, 2025, defendant's trial counsel filed a signed document that he labeled as an affidavit, which provided, in its entirety:

"I, [defense counsel], the affiant states as follows:

1. That I was court appointed counsel for [defendant] from 9/6/2022 to 3/29/2023.

2. That pursuant to my appointment I met with [defendant] on numerous occasions at which times we would review the discovery and prepare his case for trial.

3. That during the course of my representation I discharged my duties and provided him with competent and effective representation.

FURTHER AFFIANT SAYETH NOT."

Counsel did not expressly assert that he made these statements under oath. However, the document

says, "Subscribed and sworn to me the 30th day of April, 2025," and then bears a notary's signature and seal.

¶ 19        On May 13, 2025, the trial court conducted a preliminary *Krankel* inquiry, during which defendant was allowed to explain his ineffective-assistance claims to the court without representation by counsel. Defendant's counsel who represented him at the trial was not present for this inquiry. During this proceeding, the court did not refer to or use the phrase "possible neglect," which is the standard for evaluating whether *pro se* ineffective-assistance claims warrant the appointment of new counsel and further proceedings. See *Crawford*, 2024 IL App (4th) 230292-U, ¶ 13 (explaining that a court should appoint new counsel to represent a defendant in connection with his or her ineffective-assistance claims if the defendant's allegations "show possible neglect of the case"). Rather, the court said that it would not hold a "*Krankel* Hearing" on defendant's claims unless the court made "a finding of ineffective assistance of counsel." Later during the proceeding, the court similarly framed the issue as whether defendant either "proved," "demonstrate[d]," or made a "showing" of ineffective assistance of counsel.

¶ 20        Defendant took the opportunity to make a lengthy statement. He tended to switch between topics, many of which did not seem directly relevant to his ineffective-assistance claims or even pertinent to this case. However, defendant made it clear that he was unhappy that his counsel failed to "investigate or gather any information to prove [his] innocence." To that end, he mentioned there were cameras at an elementary school across the street from the home where the events giving rise to the charges occurred. Defendant asserted that these cameras "can prove there was never unlawful restraint," as they would show that he and A.H. "were separated many times" during the time frame at issue. Defendant identified other potential evidence that he believed could prove the same point, including (1) surveillance video from a camera at a liquor store he

purportedly visited on the morning of Sunday, September 4, 2022, (2) A.H.'s phone records, and (3) A.H.'s bank records.

¶ 21         Defendant also complained this his trial counsel fell asleep twice while the jury was watching a video of A.H.'s interactions with a police officer. Defendant mentioned that his counsel's assistant had to wake counsel up the first time and defendant woke counsel the second time. (We note that the trial transcripts do not reflect whether defense counsel had anyone assist him during trial.) As part of this claim, defendant asserted that he had not seen this video previously.

¶ 22         Among defendant's other comments during the postremand preliminary *Krankel* inquiry that arguably could relate to claims of ineffective assistance of counsel were: (1) the results of DNA testing would have been exculpatory and would not have contained his own DNA; (2) he was not aware that his counsel stipulated to A.H.'s injuries, and he wanted to see her medical records to prove that she was injured at work sometime before the events giving rise to this case; (3) counsel failed to ask A.H. why she did not have a chance to get out of the house if she heard defendant snoring and his gun was on the kitchen table; (4) counsel failed to inform him of "a *Brady* [*v. Maryland*, 373 U.S. 83 (1963),] violation," in that "there was a report that there was no guns found" linked to him; and (5) counsel "removed a juror."

¶ 23         Eventually, the trial court cut defendant off, telling him he was "getting into issues involving the trial and strategy and testimony." The court recounted the history of the case, which included holding a preliminary hearing, exchanging discovery, and a trial. The court recalled that defendant's counsel presented an opening statement and a closing argument, cross-examined witnesses, made a motion for a directed verdict, and offered defendant as a witness. Defendant interjected that he never saw the discovery. The court responded that it did not "get copies of

discovery" and was not a party to the attorneys' inquiries, conversations, or discussions. Nevertheless, the court noted that counsel indicated in his recent affidavit that he reviewed the discovery materials with defendant.

¶ 24    The trial court further explained that defendant was present in court on January 9, 2023, when his attorney indicated the case would proceed to trial. Defendant again interjected, seemingly arguing that his right to a speedy trial was violated. The court explained to defendant that there was no such violation here because the court had previously granted the State's request for an extension of the speedy-trial term to conduct DNA testing.

¶ 25    The trial court continued its ruling. The court remembered that on the day the trial started, the attorneys agreed to a stipulation of facts regarding A.H.'s injuries and defendant rejected a plea offer. After reiterating some points it had already mentioned, the court said:

> "And at this point, again, the burden of proof is to show that the performance of [defense counsel] was deficient and the deficiency prejudiced the defendant in this case.
>
> The Court did hear the testimony of all the witnesses, including the State's witnesses, and the State put on a strong case. And, again, which was your right, you testified and you gave your testimony as to what took place."

The court said it believed defense counsel provided effective assistance.

¶ 26    The trial court further mentioned that defendant "commandeered the trial," as it appeared to the court that defendant was "not going to take advice from" his counsel, whatever that advice was. The court noted that the jury, which found defendant guilty beyond a reasonable doubt, heard testimony and reviewed the State's exhibits, including photographs of bloodstains inside the home where A.H. claimed defendant battered her.

¶ 27 Ultimately, the trial court declined to appoint new counsel for defendant, reasoning: "First phase is whether or not [defense counsel] fell below that standard, and the Court finds, based on what has been filed, based on what I've heard, based on the recollection of the trial, in reviewing my notes on the trial, I find that [defense counsel] did not fall below the standard of ineffective assistance of counsel. So this is the first prong. I'm finding that you have not met your burden. So at this point, a *Krankel* Hearing will not be set because you did not make the first prong."

¶ 28 This court granted defendant's motion for leave to file a late notice of appeal.

¶ 29 II. ANALYSIS

¶ 30 On appeal, defendant identifies multiple purported trial errors and challenges the adequacy of the *Krankel* proceedings conducted on remand. For the following reasons, we must remand the cause a second time for a proper preliminary *Krankel* inquiry with respect to two of defendant's *pro se* ineffective-assistance claims.

¶ 31 Defendant's arguments arising from the proceedings conducted on remand, though divided into two subsections of his brief, essentially present three issues. He argues that the trial court did not "conduct an adequate inquiry into the factual basis" for all of his ineffective-assistance claims and ruled on some matters "despite not having full knowledge of the underlying facts." To that end, he asserts in his reply brief that the record developed in connection with the preliminary *Krankel* inquiry was insufficient to allow the court to "properly evaluate[ ]" his claims that defense counsel failed to investigate evidence and fell asleep during trial. Nevertheless, defendant also maintains that he demonstrated possible neglect in connection with those same two claims, as his comments to the court were "undisputed" and "unrebutted." Finally, defendant contends that the court evaluated his claims pursuant to the wrong standard, insofar as

the court erroneously believed that defendant was required to prove ineffective assistance of counsel during the preliminary *Krankel* inquiry, as opposed to merely showing possible neglect.

¶ 32    The State responds that the trial court handled defendant's ineffective-assistance claims sufficiently on remand. The State explains the court could have rejected many of defendant's claims based on its own knowledge of the proceedings and the facial invalidity of the claims. Thus, the State proposes that while input from defense counsel "might have been helpful" to evaluate defendant's claims, it was not necessary. Responding to defendant's point about the court applying the wrong standard, the State emphasizes that a court may evaluate the merits of ineffective-assistance claims in their entirety during a preliminary *Krankel* inquiry, which includes an assessment of whether a defendant was prejudiced by counsel's conduct. However, if we determine the court's analysis and procedure were improper, the State asks us to remand the cause for a second preliminary *Krankel* inquiry to determine whether defendant is entitled to new counsel.

¶ 33    Beginning with our supreme court's decision in *Krankel*, courts have developed a procedure to address *pro se* posttrial claims of ineffective assistance of counsel. *People v. Jackson*, 2020 IL 124112, ¶ 95. Specifically, a court first must "examine the factual basis of the defendant's claim," which means the court "may consider both the facts and legal merits" of the claim. *People v. Roddis*, 2020 IL 124352, ¶¶ 35, 70. "If the court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion." *Roddis*, 2020 IL 124352, ¶ 35. "However, if the allegations show possible neglect of the case, new counsel should be appointed" to represent the defendant at a hearing on the claim. *Roddis*, 2020 IL 124352, ¶ 35. This process of screening a *pro se* claim to determine whether to appoint new counsel is often referred to as a "preliminary *Krankel* inquiry." *People v. Jolly*, 2014

IL 117142, ¶ 30.

¶ 34 A preliminary *Krankel* inquiry must be "a neutral and nonadversarial proceeding," with *de minimis*, if any, participation by the State. *Jolly*, 2014 IL 117142, ¶ 38. In conducting the inquiry, " 'some interchange between the trial court and trial counsel regarding the facts and circumstances surrounding the allegedly ineffective representation is permissible and usually necessary in assessing what further action, if any, is warranted on a defendant's claim.' " *People v. Ayres*, 2017 IL 120071, ¶ 12 (quoting *Jolly*, 2014 IL 117142, ¶ 30). Thus, the court may "inquire of trial counsel about the defendant's allegations" and "discuss the allegations with [the] defendant." *Ayres*, 2017 IL 120071, ¶ 12. The court may also "make its determination based on its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations." *Ayres*, 2017 IL 120071, ¶ 12. The goal of *Krankel* proceedings is to "facilitate the trial court's full consideration of a defendant's *pro se* claim," thus creating a record and potentially limiting issues raised on appeal. *Ayres*, 2017 IL 120071, ¶ 13.

¶ 35 Our standard of review "depends on whether the trial court did or did not determine the merits of the defendant's *pro se* posttrial claims of ineffective assistance of counsel." *Jackson*, 2020 IL 124112, ¶ 98. To that end, "[w]hether the trial court properly conducted a *Krankel* preliminary inquiry presents a legal question that we review *de novo*." *Jackson*, 2020 IL 124112, ¶ 98. "However, if the trial court has properly conducted a *Krankel* inquiry and has reached a determination on the merits of the defendant's *Krankel* motion, we will reverse only if the trial court's action was manifestly erroneous." *Jackson*, 2020 IL 124112, ¶ 98. "Manifest error is error that is clearly evident, plain, and indisputable." *Jackson*, 2020 IL 124112, ¶ 98.

¶ 36 A. Defendant's Argument That the Trial Court Applied the Wrong Standard

¶ 37 We begin with defendant's point that the trial court applied the wrong standard in

evaluating his *pro se* claims. Defendant correctly notes that rather than framing its analysis in terms of "possible neglect," the court's comments suggest that it believed defendant had to prove ineffective assistance of counsel before he would be entitled to new counsel on his claims. Nevertheless, the court made an affirmative finding that defendant received effective assistance of counsel ("[Y]ou do have the right to effective assistance of counsel, and I believe [defense counsel] did so"; "I find that [defense counsel] did not fall below the standard of ineffective assistance of counsel."). Thus, regardless of how the court framed its reasoning and analysis, and regardless of whether the court's ruling was correct, the court ultimately declined to appoint new counsel for defendant upon determining that his claims lacked merit, which a court is entitled to do at a preliminary *Krankel* inquiry. See *Roddis*, 2020 IL 124352, ¶ 61 (holding that a trial court may consider the merits of *pro se* ineffective-assistance claims in their entirety during a preliminary *Krankel* inquiry).

¶ 38    We note that in *Jackson*, our supreme court held that *Roddis* "foreclosed" essentially the same argument that defendant raises here, that a trial court " 'erroneously applied a higher standard and required [the defendant] to show his counsel's ineffectiveness at this hearing.' " *Jackson*, 2020 IL 124112, ¶¶ 104-05; see *People v. McCall*, 2021 IL App (1st) 172105, ¶ 57 ("Although the trial court denied [the] defendant's motion on the basis that he failed to show ineffective assistance, rather than relying on the 'possible neglect' standard, the rulings in *Roddis* and *Jackson* are clear that the trial court is able to consider the merits of [the] defendant's claims in their entirety."). Accordingly, defendant's point about the court applying the wrong standard does not in and of itself require a remand for a new preliminary *Krankel* inquiry.

¶ 39    B. Defendant's Arguments With Respect to His Claims That His Counsel
Failed to Investigate Potential Evidence and Fell Asleep During Trial

¶ 40　　　　Although defendant asserted other claims during the preliminary *Krankel* inquiry, on appeal, he focuses on his allegations that his trial counsel (1) failed to investigate potential evidence and (2) fell asleep during trial. We hold that the trial court failed to conduct a sufficient preliminary *Krankel* inquiry with respect to these claims.

¶ 41　　　　　　　　　　　　　　1. *Potential Evidence*

¶ 42　　　　In our 2024 decision, we explained that one of the reasons the trial court needed to conduct a preliminary *Krankel* inquiry was because defendant submitted a letter complaining of his counsel's failure to gather unspecified evidence. See *Crawford*, 2024 IL App (4th) 230292-U, ¶ 17. We thus remanded the matter with directions for the court to conduct an inquiry with respect to defendant's unaddressed ineffective-assistance claims. *Crawford*, 2024 IL App (4th) 230292-U, ¶ 18.

¶ 43　　　　On remand, contrary to the typical *Krankel* procedure, the trial court did not require defendant's trial attorney to attend the preliminary *Krankel* inquiry to respond to defendant's contentions and answer any questions the court might have. See *Ayres*, 2017 IL 120071, ¶ 12 (noting that it is usually necessary to solicit information from defense counsel during a preliminary *Krankel* inquiry). Rather, the court accepted and apparently relied on a conclusory affidavit from counsel that said *nothing* about his efforts to gather evidence, let alone the specific records and surveillance videos defendant alleged should have been investigated. Moreover, although the court made a general finding that counsel provided effective assistance, the court did not discuss the surveillance videos, A.H.'s phone records, or A.H.'s bank records. The court's method of conducting a preliminary *Krankel* inquiry did not comply with our mandate with respect to defendant's allegation that his counsel failed to gather evidence, as the lack of a record and specific findings inhibits our ability to review whether defense counsel exhibited possible neglect.

¶ 44        We recognize that a trial court conducting a preliminary *Krankel* inquiry may sometimes rely on "its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations" to conclude that a claim does not warrant further proceedings. *Ayres*, 2017 IL 120071, ¶ 12. Here, however, it is evident that the court lacked personal knowledge about the scope of defense counsel's pretrial investigation, as the court stated that it was "not party to inquiries, conversations[,] [and] discussions made by the attorneys." Additionally, defendant's claim about counsel's failure to investigate potential evidence is not blatantly insufficient on its face. If available surveillance videos or records could have shown that defendant and A.H. were separately out and about town during the time frame at issue, that would have contradicted A.H.'s testimony in support of the unlawful restraint charge that she was not at liberty to leave her residence. Thus, the potential evidence defendant wanted counsel to investigate appears relevant to the case, at least from the limited record the court developed on remand.

¶ 45        The State asserts that "[t]he alleged failure to investigate the video evidence cannot establish possible neglect of the case," as the "scope of investigation is within the judgment of counsel." To the extent the State means to suggest that a trial court conducting a preliminary *Krankel* inquiry need not ascertain a complete factual basis for a claim so long as the claim might potentially implicate trial strategy, we cannot embrace that reasoning. See *People v. Woods*, 2026 IL App (4th) 241142-U, ¶ 70 ("The fact that a *pro se* claim of ineffective assistance is based on a matter which ordinarily relates to trial strategy does not permit a court to reject that claim without further inquiry when necessary."). A court cannot know whether there was any reasonable or legitimate trial strategy involved unless the court elicits a sufficient factual basis to evaluate the ineffective-assistance claim.

¶ 46        The State also proposes that defendant's "[c]ounsel could reasonably believe that

cameras located across the street, if they existed, were unlikely to produce any useful information." That is mere speculation at this point. There are many conceivable reasons why defendant's attorney might have made a reasonable strategic decision in connection with the potential evidence at issue. Counsel might have conducted the investigation defendant requested and found nothing of evidentiary value. Or maybe the results were not favorable to the defense. Perhaps, as the State suggests, counsel did not deem it necessary to investigate these particular matters for one valid reason or another. However, on the present record, we do not know what counsel did or did not do, let alone the reasons. Without soliciting defense counsel's input, the trial court did not have enough information to ascertain whether there was possible neglect in connection with counsel's failure to investigate surveillance videos and A.H.'s phone and bank records.

¶ 47                                2. *Falling Asleep*

¶ 48        We likewise determine that the trial court failed to conduct a sufficient preliminary *Krankel* inquiry regarding defendant's claim that defense counsel fell asleep twice during trial. The trial transcript does not reflect whether counsel fell asleep, so we cannot say that defendant's claim is refuted by the record. Defense counsel did not mention in his affidavit whether he fell asleep, and the court did not address this issue in its ruling. We would expect the court would have documented its observations on the record if it had information relevant to this claim. Under the circumstances, the court's failure to develop a complete factual record on this issue inhibits our ability to review whether defendant's claim reflected possible neglect by defense counsel.

¶ 49        In arguing to the contrary, the State questions the veracity of defendant's claim that counsel fell asleep in light of defendant's description of the events. As an appellate court, we do not make factual findings or credibility determinations, we review them. The trial court did not make a finding that defendant's allegations that counsel fell asleep were untrue.

¶ 50    The State also proposes that defendant's claim was "insufficient on its face." The State reasons that because counsel allegedly fell asleep while the jury watched a video that the trial court had already ruled was admissible, defendant was not prejudiced by his counsel's actions. Given defendant's allegation that his counsel fell asleep multiple times and had to be awoken in front of the jury, in the absence of a more complete factual record, we are not willing to say that defendant's allegations on this issue were insufficient on their face.

¶ 51                                    3. *Remedy*

¶ 52    Defendant's preferred remedy is for us to remand the cause to the trial court with directions to appoint counsel to represent him at an evidentiary hearing on his claims. However, he puts the cart before the horse. Defendant is entitled to new counsel if his claims evince possible neglect by his trial counsel. However, the court failed to develop a sufficient record to evaluate whether there was possible neglect in connection with the two *pro se* claims defendant focuses on in this appeal. As we recently said in *Woods*,

>   "When a defendant's claims of ineffective assistance of counsel are based on matters outside the record and the trial court failed to conduct an adequate *Krankel* inquiry, the proper remedy is to remand the matter to the trial court for the limited purpose of allowing the trial court to conduct the required inquiry." *Woods*, 2026 IL App (4th) 241142-U, ¶ 58.

¶ 53    Accordingly, we remand the matter a second time for a proper preliminary *Krankel* inquiry regarding defendant's claims that his counsel (1) failed to investigate whether available surveillance videos, A.H.'s phone records, and A.H.'s bank records could have been helpful to the defense and (2) fell asleep during trial. As part of this inquiry, the trial court shall follow the procedures we identified above in paragraphs 33 and 34, including soliciting input from

defendant's trial counsel on these matters *in person*. The court shall make findings conducive to appellate review, including determining whether defendant can demonstrate "possible neglect," warranting the appointment of new counsel to represent him in connection with his claims.

¶ 54                C. Defendant's Remaining *Pro Se* Ineffective-Assistance Claims

¶ 55                On appeal, defendant does not separately address the remaining matters he mentioned during the preliminary *Krankel* inquiry held on May 13, 2025. However, those claims obviously lacked merit on their face and/or were refuted by the record, so the trial court did not require input from defendant's trial counsel to evaluate and reject them.

¶ 56                Defendant mentioned during the preliminary *Krankel* inquiry that "the DNA results would have been exculpatory evidence." He later added that he "voluntarily, gladly gave [his] DNA to prove that's not [his] blood" inside the home. However, both parties answered ready for trial before DNA testing was completed. Additionally, although the results of forensic testing are not in the record, the absence of defendant's DNA at the scene would not have been exculpatory, as defendant admittedly resided at the home where the alleged crimes occurred. The DNA results also had the potential to be problematic evidence for the defense; if the results confirmed that A.H. bled all over the home, that would have corroborated her testimony that defendant battered her there. There was no possible neglect by defense counsel in connection with this issue.

¶ 57                Defendant also seemed to claim during the postremand preliminary *Krankel* inquiry that he was unaware that his trial counsel had stipulated to the nature of A.H.'s injuries, and he expressed a desire to review her medical records. However, that claim is refuted by the record, as the trial court asked defendant before trial started whether he was "in agreement with the stipulation as to those facts," and defendant answered, "Yes."

¶ 58                Furthermore, defendant stated during the preliminary *Krankel* inquiry that he

"experienced a *Brady* violation," in that his counsel never informed him or the trial court "that there was a report that there was no guns found." See *Brady*, 373 U.S. at 87 ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."). However, the record confirms that there was no *Brady* violation, as the trial evidence established that the police never found the gun that A.H. claimed belonged to defendant, and defense counsel highlighted that point in his closing argument. It is clear that the prosecution did not withhold that evidence from the defense.

¶ 59        Defendant also mentioned at the preliminary *Krankel* inquiry that his counsel failed to ask A.H. why she did not have a chance to get out of the house if she heard defendant snoring and his gun was on the kitchen table. This allegation makes little sense and is insufficient on its face to support an ineffective-assistance claim, as A.H. testified that she indeed left the house before midnight on September 4, 2022, after she heard defendant snoring and was confident he had fallen into a deeper sleep.

¶ 60        Finally, defendant complained at the preliminary *Krankel* inquiry that his counsel "removed a juror." The record shows that the trial court discharged a juror during trial who wrote notes to the court inquiring about matters that were not in evidence and which were potentially prejudicial to defendant (she asked whether defendant's alcoholism and use of medications accounted for his behavior and demeanor in court). This issue obviously does not support an ineffective-assistance claim, as the court, not defense counsel, was responsible for removing the juror.

¶ 61        There was no possible neglect of the case in connection with these issues, so the trial court's decision not to appoint new counsel for further proceedings on those issues was not

manifestly erroneous.

¶ 62                    D. The Remaining Issues Defendant Raises on Appeal

¶ 63        Defendant raises other issues in this appeal unrelated to *Krankel* or the proceedings on remand. We decline to reach those issues at this time. Until a trial court completes posttrial proceedings by complying with its duties under *Krankel*, it is "premature" for an appellate court to address other substantive issues. *People v. Roberson*, 2021 IL App (3d) 190212, ¶ 22; see *People v. Lawson*, 2019 IL App (4th) 180452, ¶ 57 (declining to address the defendant's remaining arguments when the matter had to be remanded for further *Krankel* proceedings); *People v. Wilson*, 2019 IL App (4th) 180214, ¶ 25 (same); *People v. Rhodes*, 2019 IL App (4th) 160917, ¶ 21 (same). Consistent with this court's precedent, we retain jurisdiction over defendant's remaining claims. This means that if defendant is dissatisfied with the outcome of the proceedings on remand, he may appeal again and raise the claims we did not address in this appeal, along with any claims that arise from the proceedings on the second remand. See *Wilson*, 2019 IL App (4th) 180214, ¶ 26.

¶ 64                              III. CONCLUSION

¶ 65        For the reasons stated, we remand the cause for a proper preliminary inquiry into two of defendant's *pro se* ineffective-assistance claims.

¶ 66        Remanded with directions.